**20- 02429**

# SECT. T MAG. 4

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: **Eastern District of Louisiana** |
|---|---|
| Name (under which you were convicted):<br>**Hector Perez** | Docket or Case No.: |
| Place of Confinement: **Louisiana State Penitentiary** | Prisoner No.: **632518** |
| Petitioner (include name under which you were convicted)<br>**Hector Perez**    v. | Respondent (authorized person having custody of petitioner)<br>**Darrel Vannoy, Warden** |
| The Attorney General of the State of Louisiana: **Jeff Landry** | |

## PETITION

1.   (a) Name and location of court that entered the judgment of conviction you are challenging:

**22nd Judicial District Court
P.O. Box 1090
Covington, LA 70434-1090**

(b) Criminal docket or case number (if you know):    **472557 Div. "E"**

2.   (a) Date of the judgment of conviction (if you know):    **December 19, 2014**

(b) Date of sentencing:    **December 20, 2014**

3.   Length of sentence:    **Life without benefits**

4.   In this case, were you convicted on more than one count or more than one crime?    ☐ Yes    X No

5.   Identify all crimes of which you were convicted and sentenced in this case:
**1 Count of Aggravated rape  La.R.S. 14:42**

6.   What was your plea? (Check one)

   X (1) Not guilty          ☐ (3) Nolo contendere (no contest)
   ☐ (2) Guilty          ☐ (4) Insanity Plea

   b)    If you entered a guilty plea to one count or indictment, and a not guilty plea to another

   count what did you plead guilty to and what did you plead not guilty to?

   (c) If you went to trial, what kind of trial did you have? (Check one)

   X  Jury    ☐  Judge only

7.   Did you testify at a pretrial hearing, trial, or post-trial hearing?

   X  Yes          ☐  No

8.   Did you appeal from the judgment of conviction?

   X  Yes          ☐  No

X Fee Pauper
___ Process____
X Dktd_____
___ CtRmDep_____
___ Doc. No._____

**TENDERED FOR FILING**

**SEP 03 2020**

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

9.    If you did appeal, answer the following:

    (a) Name of court:

    (b) Docket or case number (if you know):    **No. 2015-KA-1070**

    (c) Result:    **Affirmed**

    (d) Date of result:    **December 23, 2015**

    (e) Citation to the case (if you know):

    (f) Grounds raised:

    (g) Did you seek further review by a higher state court?    X Yes    □ No

        If yes, answer the following:

        (1)    Name of court: **Louisiana Supreme Court**

        (2)    Docket or case number (if you know): **No. 2016-KO-0176**

        (3)    Results:    **Denied**

        (4)    Date of result (if you know): **February 03, 2017**

        (5)    Citation to the case (if you know):

        (6)    Grounds raised:

    (h) Did you file a petition for certiorari in the United States Supreme Court?    □ Yes    X No

        If yes, answer the following:

        (1) Docket or case number (if you know):

        (2) Result:

        (3) Date of result (if you know):

        (4) Citation to the case (if you know):

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? X Yes    □ No

11.    If your answer to Question 10 was "Yes", give the following information:

    (a)    (1) Name of court:    **22nd Judicial District Court**

        (2) Docket or case number (if you know):    **472557**

        (3) Date of filing (if you know):    **March 22, 2018**

        (4) Nature of the proceeding:    **APPLICATION FOR POST CONVICTION RELIEF (PCR)**

        (5) Grounds raised:    **1.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO ASK FOR A MISTRIAL, OR AT LEAST TO DISQUALIFY TAINTED PANEL OF JURORS WHERE EXTRINSIC FACTS AND EVIDENCE TAINTED THE JURY POOL.**

        **2.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO THE PREJUDICIAL USE OF INADMISSIBLE CSAAS EVIDENCE AT TRIAL.**

        **3.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO**

OBJECT AND ASK FOR A DIRECTED VERDICT WHEN THE ALLEGED VICTIM FAILED TO TESTIFY TO ALL ELEMENTS OF THE CRIME CHARGED.

4.      INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO RAISE ISSUE OF IMPEACHED TESTIMONY, STANDING ALONE, BEING UNCONSTITUTIONALLY USED TO OBTAIN CONVICTION.

5.      TRIAL COUNSEL FAILED TO OBJECT TO THE STATE'S USE OF OUT-OF-COURT TESTIMONIAL STATEMENTS OF THE ALLEGED VICTIM'S MOTHER IN VIOLATION OF CRAWFORD V. WASHINGTON.

6.      APPELLATE COUNSEL FAILED TO RAISE ISSUES ON APPEAL RELATED TO OBJECTIONS ON THE RECORD TO PROSECUTORIAL MISCONDUCT.

(6) Did you receive a hearing where evidence was given on your petition, application or motion?

□ Yes       X No

(7) Result: **Denied**

(8) Date of result (if you know): **June 05, 2019**

(b) If you filed any second petition, application or motion give the same information:

(1) Name of court:       **First Circuit Court of Appeal**

(2) Docket or case number (if you know):       **2019-KW-0946**

(3) Date of filing (if you know):       **July 05, 2019**

(4) Nature of the proceeding:   **Application for Supervisory Writ of Review on PCR**

(5) Grounds raised:     1.     INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO ASK FOR A MISTRIAL, OR AT LEAST TO DISQUALIFY TAINTED PANEL OF JURORS WHERE EXTRINSIC FACTS AND EVIDENCE TAINTED THE JURY POOL.

2.      INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO THE PREJUDICIAL USE OF INADMISSIBLE CSAAS EVIDENCE AT TRIAL.

3.      INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT AND ASK FOR A DIRECTED VERDICT WHEN THE ALLEGED VICTIM FAILED TO TESTIFY TO ALL ELEMENTS OF THE CRIME CHARGED.

4.      INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO RAISE ISSUE OF IMPEACHED TESTIMONY, STANDING ALONE, BEING UNCONSTITUTIONALLY USED TO OBTAIN CONVICTION.

5.      TRIAL COUNSEL FAILED TO OBJECT TO THE STATE'S USE OF OUT-OF-COURT TESTIMONIAL STATEMENTS OF THE ALLEGED VICTIM'S MOTHER IN VIOLATION OF CRAWFORD V. WASHINGTON.

6.      APPELLATE COUNSEL FAILED TO RAISE ISSUES ON APPEAL RELATED TO OBJECTIONS ON THE RECORD TO PROSECUTORIAL MISCONDUCT.

(6) Did you receive a hearing where evidence was given on your petition, application or motion?

□ Yes       X No

(7) Result:     Denied

(8) Date of result (if you know):       October 05, 2019

(c) If you filed any third petition, application or motion, give the same information:

    (1) Name of court:                      **Louisiana Supreme Court**

    (2) Docket or case number (if you know):     **2019-KH-1958**

    (3) Date of filing (if you know):          **October 25, 2019**

    (4) Nature of the proceeding:  **Application for Writ of Certiorari or Review on PCR**

    (5) Grounds raised:    1.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO ASK FOR A MISTRIAL, OR AT LEAST TO DISQUALIFY TAINTED PANEL OF JURORS WHERE EXTRINSIC FACTS AND EVIDENCE TAINTED THE JURY POOL.

2.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO THE PREJUDICIAL USE OF INADMISSIBLE CSAAS EVIDENCE AT TRIAL.

3.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT AND ASK FOR A DIRECTED VERDICT WHEN THE ALLEGED VICTIM FAILED TO TESTIFY TO ALL ELEMENTS OF THE CRIME CHARGED.

4.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO RAISE ISSUE OF IMPEACHED TESTIMONY, STANDING ALONE, BEING UNCONSTITUTIONALLY USED TO OBTAIN CONVICTION.

5.    TRIAL COUNSEL FAILED TO OBJECT TO THE STATE'S USE OF OUT-OF-COURT TESTIMONIAL STATEMENTS OF THE ALLEGED VICTIM'S MOTHER IN VIOLATION OF CRAWFORD V. WASHINGTON.

6.    APPELLATE COUNSEL FAILED TO RAISE ISSUES ON APPEAL RELATED TO OBJECTIONS ON THE RECORD TO PROSECUTORIAL MISCONDUCT.

    (6) Did you receive a hearing where evidence was given on your petition, application or motion?

                      □ Yes     X  No

    (7) Result:   **Denied**

    (8) Date of result (if you know):       **August 14, 2020**

(d) Did you appeal to the highest state court having jurisdiction the result of action taken on your petition, application or motion?

    (1) First petition:    X  Yes    □  No

    (2) Second petition:   □  Yes    □  No

    (3) Third petition:    □  Yes    □  No

(e) If you did not appeal to the highest state court having jurisdiction, explain briefly why you did not:

12.    For this petition, state every ground which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

    CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust (use up) your available state court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE:     1.     INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO ASK FOR A MISTRIAL, OR AT LEAST TO DISQUALIFY TAINTED PANEL OF JURORS WHERE EXTRINSIC FACTS AND EVIDENCE TAINTED THE JURY POOL.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Petitioner contends that his federal and state constitutional rights to a fair and impartial trial was violated and his conviction unconstitutionally obtained. In this case, before trial commenced and during voir dire, one of the potential jurors, Mrs. Schuster, admitted that she worked for CASA. Subsequently, Mrs. Schuster explained at sidebar that she was a victim of rape which led her to become a nurse in sexual trauma, and to work with CASA.

Thereafter, the prosecutor posed questions to the jury panel regarding delayed disclosure, and Mrs. Schuster started testifying about conflicting emotions of a child victim toward their abuser, grooming of children by child molesters, changing dynamics in a child's mind, developed memories, etc. (Tr. tran. pp. 409-414).

Trial counsel objected, but the judge did not even give the jury an admonishment or an instruction. The prosecutor continued to question the potential jurors in this manner.

The potential jurors were adversely affected, and assumed negative connotations and inferences toward Petitioner and presumed the allegations were true and that the accusing witness was a "victim". This is proven by the comments of the potential jurors during voir dire, and especially the "education" Mrs. Schuster gave to the others on the panel, and the rest of the jury venire in the courtroom, regarding delayed disclosure and other psychological phenomena that assumes guilt.

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c)     Direct Appeal of Ground One:

    (1)    If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    X No

    (2)    If you did not raise this issue in your direct appeal, explain why:

(d) Post Conviction Proceedings:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?                                                                    X Yes            ☐ No

    (2) If you answer to Question (d)(1) is "Yes," state:

    Type of motion or petition:     Application for Post Conviction Relief (PCR). See citations supra.

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion or petition?        ☐ Yes    ☐ No

    (4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☐ No

    (5) If you answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

                                                                                    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:     2.     INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO THE PREJUDICIAL USE OF INADMISSIBLE CSAAS EVIDENCE AT TRIAL.**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial counsel failed to object to the prejudicial use of inadmissible CSAAS evidence at trial, and failed to call for a Daubert hearing on the issue. The trial court went against Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and State v. Foret, 628 So.2d 1116 (La. 1993), in order to allow testimony regarding Child Sexual Abuse Accommodation Syndrome (CSAAS). This testimony squarely addresses the credibility of the accusing witness. The Foret court found that the bolstering of the alleged victim's credibility was an improper comment that served to unduly prejudice the defendant, and was not harmless error, reversing the conviction.

The whole CSAAS issue was reviewed by the Louisiana Supreme Court and was found lacking, as it did not pass the Daubert criteria. State v. Foret, supra; See also, Daubert v. Merrel Dow Pharmaceuticals, Inc., supra. Therefore, it should not have been utilized by the State at Petitioner's trial to bolster the credibility of the alleged victim, and to assume she was a "victim" rather than an alleged victim who brought forth an accusation. It is the province of the jury to decide, after admissible evidence is presented, whether the accusing witness is a victim and whether the accused is innocent or guilty. The CSAAS evidence assumes guilt from the start, invaded the province of the jury, and prejudiced Petitioner.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     □ Yes          X No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?     X Yes          □ No

(2) If you answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     **Application for Post Conviction Relief. See citation supra.**

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?        □   Yes        □   No

(4) Did you appeal from the denial of your motion or petition?   □   Yes        □   No

(5) If you answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

                                                                 □   Yes        □   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:


(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two:


**GROUND THREE:   3.     INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT AND ASK FOR A DIRECTED VERDICT WHEN THE ALLEGED VICTIM FAILED TO TESTIFY TO ALL ELEMENTS OF THE CRIME CHARGED.**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Petitioner contends that the alleged victim failed to testify to all of the elements of the charged crime, thus, the State failed in their burden to prove each element of the charged crime beyond a reasonable doubt. Further, once this became obvious after the State rested its case, trial counsel failed to object and ask for a directed verdict of not guilty.

The definition of genitalia, (plural of genital), is, "The reproductive organs, esp. the external sex organs." Webster's II New Riverside University Dictionary: Boston, MA Houghton-Mifflin.

The genitalia are the sexual organs. In the female, the clitoris, labia (labium major, labium minor), and vaginal opening are the external sexual organs. These are all contained within the "middle," and outside of that area is the Mons, which is not part of the genitalia.

Further, the "butt crack" is not the anus, which is, "The excretory opening of the alimentary canal." Webster's II New Riverside University Dictionary: Boston, MA Houghton-Mifflin.

The butt crack is actually made by the abutment of the two round, fleshy parts of the rump. The "crack" formed, unlike the "middle" of the vagina, does not contain the anus, rather the anus is found where the butt crack ends, near the vaginal opening, and separated from the vaginal opening by the perineum. It can not be assumed that touching the butt crack involves touching the anus since they are two separate and distinct things.

However, the prosecutor erroneously told the jury in closing arguments that:

There were two specific areas where Ally described behavior by the

defendant that meets the definition of aggravated rape here in the state of

Louisiana. In her interview with Ms. Rickles, at 4:48 p.m. and 48 seconds, Ally talked about how when the defendant would lick the outer part of her vagina, he would ask her one day if he could lick the middle part. And you don't -- the middle part, it's not necessary that the middle part be the portion that was licked to make it oral sex. It can be any portion of the genitalia. So there you've got one example of aggravated rape.

There was a particular detail that Ally went into with Dr. Head where she talked about the defendant stuck his tongue up her butt crack and it would feel very nasty, wet and very uncomfortable and that that had happened more than one time. That, by itself, is aggravated rape.

At trial, the alleged victim failed to testify to each element of the charged crime of aggravated rape. This includes the video evidence, and the several State experts called to the stand. Trial counsel failed to object once the State rested its case without proving the necessary elements of the charged crime, and failed to ask for a directed verdict of not guilty.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)   **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes  X  No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?                                                                  X  Yes              ☐ No

(2) If you answer to Question (d)(1) is "Yes," state:

Type of motion or petition:        **Application for Post Conviction Relief. See citation supra.**

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?              ☐  Yes       ☐   No

(4) Did you appeal from the denial of your motion or petition?          ☐  Yes       ☐   No

(5) If you answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

                                                                        ☐  Yes       ☐   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:    4.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO RAISE ISSUE OF IMPEACHED TESTIMONY, STANDING ALONE, BEING UNCONSTITUTIONALLY USED TO OBTAIN CONVICTION.**

(a)    Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

While the credibility of a witness is a matter for the finder of fact, once impeached, that witness's testimony becomes suspect under the law and must be corroborated in order to be convincing evidence of guilt or innocence. This is especially true where the credibility of the witness is paramount to the outcome of the case.

In State v. Kennedy, 803 So.2d 916 (La. 2001), in Justice Traylor's dissenting opinion, it is stated that the Louisiana Supreme Court has found that, "The victim's testimony, standing alone, can prove that the act occurred, . . ." but is qualified in FN9, "However, we have also ruled post-trial that impeached testimony of a witness, standing alone, cannot prove the offense."

Impeached testimony, as a general rule, cannot stand alone to convict. State v. Chism, 591 So.2d 383, 386 (La. App. 2 Cir. 1991), citing State v. Laprime, 437 So.2d 1124 (La. 1983); State v. Lott, 535 So.2d 963 (La. App. 2 Cir. 1988).

To one of the State's many experts, the alleged victim stated that there was a witness to the alleged acts against her. To a different expert, she claimed there was no witness to the alleged abuse.

To one expert, she stated that there was semen emitted from Petitioner's penis. To another expert, she stated that there was never any emission of semen.

To one expert she stated that she was always abused in her room. To another expert, she stated that Petitioner would sometimes come to her room and carry her to his room to abuse her.

The trial record shows that the trial testimony of the accusing witness is impeached testimony. There is no corroboration of any of her accusations. Since her testimony is the only evidence against Petitioner, it is clearly insufficient, standing alone, to sustain this conviction. Further, it underscores the value of the Brady evidence withheld from Petitioner when the grand jury testimony of this witness was suppressed.

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    Direct Appeal of Ground Four:

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    X No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) Post Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    X Yes    ☐ No

(2) If you answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     **Application for Post Conviction Relief. See citation supra.**

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?          □   Yes          □   No

(4) Did you appeal from the denial of your motion or petition?     □   Yes          □   No

(5) If you answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

                                                                   □   Yes          □   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.)

that you have used to exhaust your state remedies on Ground Four:

**GROUND FIVE:     5.     TRIAL COUNSEL FAILED TO OBJECT TO THE STATE'S USE OF OUT-OF-COURT TESTIMONIAL STATEMENTS OF THE ALLEGED VICTIM'S MOTHER IN VIOLATION OF CRAWFORD V. WASHINGTON.**

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The prosecutor elicited from State witnesses the out-of-court testimonial statements of Angela White Perez, the alleged victim's mother, and further used her statements in opening and closing arguments. However, Angela White Perez was not called to the stand at trial by the State either before or after placing this testimonial evidence before the jury, in violation of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

Trial counsel made a hearsay objection which the judge overruled. (Tr. tran. pp. 812-813 & 817-819). This allowed Jayme Anderson, the original case detective, to testify for Angela White Perez by proxy, (Tr. tran. pp. 812-821), which is a direct violation of Crawford, supra.

Further, trial counsel objected to double hearsay, which the judge overruled, when the State sought to have Jackie Nettles, a school counselor, testify to out-of-court statements made by Ms. Perez to her Daughter, Ally, the alleged victim in this case.

Angela White Perez did not believe that her daughter was telling the truth about being abused by Petitioner. The case detective, Jayme Anderson, admits that she never investigated the claims of Ms. Perez. It was in the interest of the State to assassinate Ms. Perez' character, and present her to the jury as an unfit mother and a liar in cahoots with Petitioner.

The entire investigation was conducted with an improper animus. It may have been discovered that Ms. Perez was correct about her daughter lying, but the investigation proceeded from the very outset as though the bald accusations were completely true, and no other theories or avenues of investigation were ever considered.

Clearly, trial counsel should have immediately objected to this erroneously introduced evidence as being a violation of the Confrontation Clause. This was also immaterial evidence produced before the jury, and was subject to a mandatory mistrial under La.C.Cr.P. Art. 770. Again, trial counsel failed to ask for one.

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)      **Direct Appeal of Ground Five:**

         (1) If you appealed from the judgment of conviction, did you raise this issue?    □ Yes      X No

         (2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post Conviction Proceedings:**

         (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?                                   X Yes      □ No

         (2) If you answer to Question (d)(1) is "Yes," state:

         Type of motion or petition:      **Application for Post Conviction Relief. See citation supra.**

         Name and location of the court where the motion or petition was filed:

         Docket or case number (if you know):

         Date of court's decision:

         Result (attach a copy of the court's opinion or order, if available):

         (3) Did you receive a hearing on your motion or petition?        □ Yes     □ No .

         (4) Did you appeal from the denial of your motion or petition?      □ Yes     □ No

         (5) If you answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

                                                  □ Yes     □ No

         (6) If your answer to Question (d)(4) is "Yes," state:

         Name and location of the court where the motion or petition was filed:

         Docket or case number (if you know):

         Date of court's decision:

         Result (attach a copy of the court's opinion or order, if available):

         (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

**GROUND SIX:**     6.     **APPELLATE COUNSEL FAILED TO RAISE ISSUES ON APPEAL RELATED TO OBJECTIONS ON THE RECORD TO PROSECUTORIAL MISCONDUCT.**

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
         Petitioner avers that this case clearly shows that the Prosecutorial Misconduct presented herein so

infected the trial with unfairness that he was denied Due Process, and the misconduct was of sufficient magnitude to result in the denial of a fair trial.

During the State's closing argument, the prosecutor called the defendant a "demon." This was objected to, however, no curative instruction was given to the jury by the trial judge.

> Well, you 12 citizens are not powerless here today. You have the ability to restore
> that child's faith in the human race, to tell her that it's over, that she's safe and
> that her demon is gone. Thank you.

(Tr. tran. pp. 1086-1087).

The objection was that it is improper for the prosecutor to ask the jury to "restore" Ally, as well as to refer to the defendant as a "demon." Further, the prosecutor stated,

> This case boils down – it's very simple to what this case boils down to: Do you
> believe Ally or do you believe him? That's what this case boils down to.

(Tr. tran. p. 1075).

What every criminal trial is supposed to boil down to, is whether or not the State proves each element of the charged crime beyond a reasonable doubt. It's the State's burden, not Petitioner's. After impermissibly attacking Petitioner's character, this is doubly prejudicial, and clear prosecutorial misconduct.

The prosecutor stated that defense attorneys were, "they're trained to try to divert your attention," and defense counsel objected, which was overruled by the trial judge. The prosecutor then went on to state that, "Mr. Burke is among the best attorneys in the building. And I'll concede right now that if you-all's chore at the conclusion of this trial was to go back in this room and deliberate and vote on who is the better lawyer, I'll lose, I'll lose that vote." (Tr. tran. pp. 1076-1077).

It is improper to make personal references to the skill, or lack thereof, of opposing counsel. *State v. Duplessis*, 457 So.2d 604 (La. 1984). These prejudicial remarks clearly exceed the scope of closing arguments. *State v. Hamilton*, 356 So.2d 1360 (La. 1978). Also, this trial was a swearing contest, the evidence was not even close to overwhelming, and the comments were not invited by the defense. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464 (1986). It is also clear that this was pronounced and persistent misconduct. *Felde v. Blackburn*, 795 F.2d 400 (5th Cir. 1986).

(b)     If you did not exhaust your state remedies on Ground Four, explain why:


(c)     **Direct Appeal of Ground Six:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes     X  No

(2) If you did not raise this issue in your direct appeal, explain why:


**(d) Post Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?                                                                        X Yes          ☐ No

(2) If you answer to Question (d)(1) is "Yes," state:

Type of motion or petition:        **Application for Post Conviction Relief. See citation supra.**

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?        □ Yes □ No

(4) Did you appeal from the denial of your motion or petition?        □ Yes □ No

(5) If you answer to question (d)(4) is "Yes," did you raise this issue in the appeal?

                                                      □ Yes □ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If you answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(c)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

13.    Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?        X Yes     □ No

If you answer is "No," state which grounds have not been do presented and give your reason(s) for or not presenting them:

(b)     Is there any ground in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them:

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?        □ Yes     X No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy or any court opinion or order, if available.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?        □ Yes     X No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised.

(16)    Give the name and address, if you know, of each attorney who represented you in the following stages of

the judgment you are challenging:

(a) At preliminary hearing:      **James G. Burke, III, Public Defender**
                                 **402 N. Jefferson Ave,**
                                 **Covington, LA 70433**

(b) At arraignment and plea:    **Same**

(c) At trial:                    **Same**

(d) At sentencing:               **Same**

(e) On appeal:  La Appellate Project:   **Sherry Watters, LA Appellate Project**
                                 **P.O. Box 58769**
                                 **New Orleans, LA 70158-8769**

(f) In any post-conviction proceeding:  *Pro se*

(g) On appeal from any ruling against you in a post-conviction proceeding:    *Pro se*

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are
      challenging?                                    □ Yes          X No

      (a) If so, give the name and location of the court that imposed the other sentence you will serve in the
      future:

      (b) Give the date the other sentence was imposed:

      (c) Give the length of the other sentence:

      (d). Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be
      served in the future?                           □ Yes          □ No

18.   TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must
      explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your
      petition.[1]

                              **STATEMENT OF TIMELINESS**

      **On February 03, 2017, the Louisiana Supreme Court denied certiorari on direct appeal**

---

1 The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244 (d) provides
in part that:
    (1)    A one year period of limitation shall apply to an application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration
of the time for seeking for such review;
        (B)    the date on which the impediment to filing an application created by State action in violation of
the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court,
if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral
review; or
        (D)    the date on which the factual predicate of the claim or claims presented could not have been
discovered through the exercise of due diligence.
    (2)    The time during which a properly filed application for State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this
subsection.

Petitioner's conviction became final for purposes of the AEDPA on May 04, 2017, when the 90 day period for seeking relief in the United States Supreme Court expired. *Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003).

The federal one-year period began to run on May 05, 2017, the day after Petitioner's conviction became final for AEDPA purposes. See *Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998). Three hundred twenty-two (322) days elapsed until Petitioner filed his Application for Post Conviction Relief (PCR) on March 22, 2018 and tolled the one-year limitation period, leaving forty-three (43) days until expiration of the one-year period.

On March 22, 2018, Petitioner filed his original Application for Post Conviction Relief and Memorandum in Support in the state district court.

On June 05, 2019, the state district court denied Petitioner's PCR.

On July 05, 2019, Petitioner timely filed for Supervisory Writs in the First Circuit Court of Appeal, which was denied on October 05, 2019. (Docket No. 2019-KW-0946).

On October 25, 2019, Petitioner timely filed an Application for Writ of Certiorari or Review in the Louisiana Supreme Court, which was denied on August 14, 2020. (Docket No. 2019-KH-1958).

Therefore, the forty-three (43) days remaining on Petitioner's one year time limit did not change while Petitioner was timely filed in the state courts on post conviction relief. The clock started to run again on August 15, 2020, the day after the Louisiana Supreme Court denied Certiorari on PCR.

Petitioner has filed the instant Petition for Habeas Corpus in this Honorable Court within the forty-three (43) days remaining on Petitioner's one year time limit, and is therefore timely. *Varnado v. Cain*, [2003 U.S. Dist. Lexis 3351 (E.D.La. 2003).] citing *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Therefore, petitioner asks that the Court grant the following relief:

To vacate his conviction and sentence and order him released from custody.

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on (month, day, year).

*09-02-20*

Executed (signed) on (date)

*Hector Perez*

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Civil Action No.: _____

HECTOR PEREZ
*Petitioner*

Versus

DARREL VANNOY, Warden
Louisiana State Prison
*Respondent*

PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
PURSUANT TO TITLE 28 U.S.C., SECTION 2254

Respectfully submitted, *pro se*, this **02** day of September, 2020.

Hector Perez #632518
M.P. - Hickory 3
LA State Prison
Angola, LA 70712

TABLE OF CONTENTS

page

COVER

TABLE OF CONTENTS...................................................................................1

TABLE OF AUTHORITIES..............................................................................2

PETITION FOR WRIT OF HABEAS CORPUS.................................................1

JURISDICTION AND VENUE..........................................................................1

STATEMENT OF THE CASE............................................................................2

STATEMENT OF THE FACTS..........................................................................4

ISSUES PRESENTED........................................................................................5

ARGUMENT.......................................................................................................6

    1..........................................................................................................................6

    2..........................................................................................................................9

    3........................................................................................................................15

    4........................................................................................................................19

    5........................................................................................................................20

    6........................................................................................................................24

CONCLUSION...................................................................................................27

CERTIFICATE OF SERVICE...........................................................................28

APPENDICES.....................................................................................................29

TABLE OF AUTHORITIES

page

Constitution

Louisiana Constitution, Article 1, § 2 .......................................................................................20, 27

Louisiana Constitution, Article 1, § 3 ..................................................................................................27

Louisiana Constitution, Article 1, § 13 .................................................................18, 20, 24, 27

Louisiana Constitution, Article 1, § 16 ............................................................................7, 15, 27

Louisiana Constitution, Article 1, § 19 ................................................................................................27

Louisiana Constitution, Article 1, § 22 ................................................................................................27

United States Constitution, Amendment 5 ..............................................................20, 24, 27

United States Constitution, Amendment 6 ...............................................18, 20, 22, 24, 27

United States Constitution, Amendment 8 ....................................................................................24

United States Constitution, Amendment 14 ......................................................18, 20, 24, 27


Code

28 U.S.C. § 2254 ..........................................................................................................................................1

La. R.S. 14:41 ............................................................................................................................................15

La. R.S. 14:42 .........................................................................................................................................2, 15

La. R.S. 15:271 .........................................................................................................................................15

La.C.Cr.P. Art. 770 ................................................................................................................................22

Louisiana Code of Evidence, Article 702 .................................................................................12-13


Federal Cases

Bell v. Evatt, 72 F.3d 421 (4th Cir. 1995) ................................................................................26

Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) .................5, 20-22

Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464 (1986) ..................................................25

Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) ...........................24

Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579,
               113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) .........................9, 12-14

Donnelly v. DeChristophoro, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) ...............24

Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)................................................3

Farese v. United States, 428 F.2d 178 (5th Cir. 1970)................................................9

Felde v. Blackburn, 795 F.2d 400 (5th Cir. 1986)................................................25

Greer v. Miller, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987)................................................24

Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)................................................3

Hernandez v. Thaler, 630 F.3d 420 (5th Cir. 2011)................................................3

Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)................................................9

Johnson v. Quarterman, 479 F.3d 358 (5th Cir. 2007)................................................3

Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)................................................12

Kutzner v. Johnson, 242 F.3d 605 (5th Cir. 2001)................................................24

Latiolais v. Whitley, 93 F.3d 205 (5th Cir. 1996)................................................26-27

Loyd v. Whitley, 977 F.2d 149, 158 (5th Cir. 1992)................................................20

McNeil v. United States, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)................................................3

Melancon v. Kaylo, 259 F.3d 401 (5th Cir. 2001)................................................3

Moore v. Johnson, 194 F.3d 586, 604 (5th Cir. 1999)................................................20

Passman v. Blackburn, 797 F.2d 1335 (5th Cir. 1986)................................................23

Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954)................................................8

Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965)................................................8

U.S. v. Hastings, 461 U.S. 499, 103 S.Ct. 1974 (1983)................................................26

U.S. v. Lindermann, 85 F.3d 1232 (7th Cir. 1996)................................................9

United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)................................................24

United States v. Howard, 506 F.2d 865 (5th Cir. 1975)................................................8

United States v. Kayode, 777 F.3d 719 (5th Cir. 2014)................................................3

United States v. Okeefe, 722 F.2d 1175 (5th Cir. 1983)................................................8

United States v. Tomblin, 42 F.3d 163 (5th Cir. 1994)................................................26

United States v. Vasquez, 597 F.2d 192 (9 Cir. 1979)................................................9

United States v. Winkle, 587 F.2d 705 (5th Cir. 1979)................................................8-9

Vela v. Estelle, 708 F.2d 954 (5th Cir. 1983)................................................22

Velarde v. Shulsen, 757 F.2d 1093 (10th Cir. 1985)................................................23

White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)................................................23

State Cases

State v. Bibb, 626 So.2d 913 (La. App. 5 Cir. 1993)...................................................................8

State v. Bolden, 103 So.3d 377 (La. App. 3 Cir. 10/5/11)..........................................................22

State v. Bretz, 394 So.2d 245 (La. 1981).....................................................................................26

State v. Brunet, 521 So.2d 594 (La.App. 1 Cir. 1988)................................................................23

State v. Chism, 591 So.2d 383 (La. App. 2 Cir. 1991)...............................................................19

State v. Collins, (La. App. 5 Cir. 2002), 833 So.2d 476...............................................................8

State v. Duplessis, 457 So.2d 604 (La. 1984)..............................................................................25

State v. Foret, 628 So.2d 1116 (La. 1993)..............................................................9-10, 12-13

State v. Hamilton, 356 So.2d 1360 (La. 1978).............................................................................25

State v. Kennedy, 803 So.2d 916 (La. 2001)...............................................................................19

State v. Laprime, 437 So.2d 1124 (La. 1983)..............................................................................19

State v. Lott, 535 So.2d 963 (La. App. 2 Cir. 1988)...................................................................19

State v. Marchand, 362 So.2d 1090 (La. 1978).............................................................................8

State v. Perez, 215 So.3d 695 (La. 2017)......................................................................................2

State v. Prestridge, 339 So.2d 1194 (La. 1976)...........................................................................15

State v. Prestridge, 399 So.2d 564 (La.1981).............................................................................15

State v. Ross, 28 So.3d 640 (La. App.5 Cir.11/24/09)................................................................12

State v. Sinegal, 393 So.2d 684 (La. 1981)...............................................................................8-9

State v. Vessel, 450 So.2d 938 (La. 1984....................................................................................23

Other

Webster's II New Riverside University Dictionary: Boston, MA Houghton-Mifflin.......................16

IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HECTOR PEREZ

        *Petitioner*

*Versus*

DARREL VANNOY, Warden
Louisiana State Prison

        *Respondent*

Civil Action

Case No.: _____

Section: _____

Judge: _____

## PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY PURSUANT TO TITLE 28 U.S.C., SECTION 2254

NOW INTO COURT comes, Hector Perez, *pro se* Petitioner herein, who petitions this Honorable United States District Court, Eastern District of Louisiana, for Habeas Corpus Relief pursuant to 28 U.S.C. § 2254, and submits that he is being held in custody in violation of Federal Law and the United States Constitution.

Petitioner asks this Honorable Court to issue a Writ of Habeas Corpus granting relief from his unlawful custody by issuance of an Order of Acquittal, or, at the least, by ordering that Petitioner's case be remanded for a new trial. Alternatively, this case should be remanded for an Evidentiary Hearing.

Petitioner respectfully presents the following in support of this Petition:

### JURISDICTION AND VENUE

Jurisdiction arises under Title 28 U.S.C. § 2254(a); Federal Judges shall entertain habeas corpus application "on behalf of a person in custody pursuant to the judgment of a state court on the ground that he is in custody in violation of the Constitution or laws and treaties of the United States."

This petition is respectfully filed into the United States District Court for the district in which Petitioner was unlawfully indicted, tried, convicted and sentenced.

1

STATEMENT OF THE CASE

Hector Perez, *pro se* Petitioner herein, was indicted by a St. Tammany Parish Grand Jury on August 13, 2009 on a charge of aggravated rape of his step-daughter, A.W., between April 2006 and February 16, 2009, in violation of La.R.S. 14:42. His wife, Angela, was charged in a second count of the indictment with being an accessory after the fact. Petitioner pled not guilty. (Docket No. 472557).

A twelve-person jury trial was held which concluded on December 19, 2014 with a verdict of guilty as charged. Petitioner filed motions for post-verdict judgment of acquittal and a new trial, which were denied by the trial court.

On December 20, 2014, the court sentenced Petitioner to life imprisonment without benefit of parole, probation or suspension of sentence.

On August 21, 2015, Sherry Watters, Louisiana Appellate Project, appealed Petitioner's conviction and sentence to the Louisiana First Circuit Court of Appeal. Petitioner filed a Supplemental Appellate Brief.

On December 23, 2015, the First Circuit Court of Appeal affirmed Petitioner's conviction and sentence. The case was before McDonald, McClendon, and Theriot, JJ. (Docket No. 15-KA-1070) (2015 WL 9464512) (Appendix D).

Petitioner timely filed an Application for Writ of Certiorari in the Louisiana Supreme Court on January 20, 2016 which was denied on February 03, 2017. (Docket No. 16-KO-0176) *State v. Perez*, 215 So.3d 695 (La. 2017) (Appendix C).

Petitioner timely filed his Application for Post Conviction Relief on March 22, 2018, which was denied by the district court on April 16, 2018.

Petitioner timely filed a Supervisory Writ Application in the First Circuit Court of Appeal. On July 23, 2018, the First Circuit Granted the Writ Application, vacated the district court's denial of post conviction relief, and remanded the case to the district court to consider the merits of his Ineffective

2

assistance of counsel claims. The case was before Theriot, Chutz and Penzato, JJ. (Docket No. 2018-KW-0597) (2018 WL 3533494).

On June 14, 2019, the district court filed a denial of post conviction relief on remand. On June 25, 2019, Petitioner filed a Notice of Intent to Seek Supervisory Writs.

On July 07, 2019, Petitioner filed an Application for Supervisory Writs in the First Circuit Court of Appeal, which was denied on September 30, 2019. (Before McDonald Theriot, and Chutz, JJ.) (Docket No. 2019-KW-0946) (2019 WL 4751564) (Appendix B).

On October 25, 2019, Petitioner filed an Application for Certiorari or Review in the Louisiana Supreme Court, which was denied on August 14, 2020. (Docket No. 2019-KH-1958) (2020 WL 4727300) (Appendix A).

This timely filed Petition for Writ of Habeas Corpus follows. Petitioner states that he has remained in continued custody since his arrest, and is currently being held in custody in the Louisiana State Prison at Angola, Louisiana, Darrel Vannoy, Warden.

Further, Petitioner is a *pro se* litigant. Therefore, he asks that his efforts herein be liberally construed as he has made a good faith effort to follow form. *United States v. Kayode*, 777 F.3d 719, 741, n. 5[1] (5th Cir. 2014).

---

1 [FN 5] See, e.g., *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (acknowledging that the Supreme Court has "insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed") (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). See also *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) ("The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction."); *Johnson v. Quarterman*, 479 F.3d 358, 359 (5th Cir. 2007) (Briefs by *pro se* litigants are afforded liberal construction...."); *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) (reasoning that the *pro se* habeas petitioner's argument that he should not be punished for the improper setting of the return date should be construed as a request for equitable tolling, despite his failure to "explicitly raise the issue of equitable tolling").

## STATEMENT OF THE FACTS

The Louisiana First Circuit Court of Appeal summarized the facts of the case on direct appeal in

the following manner:

> In 2002, Angela Perez became involved in a relationship with the defendant.
> They were living in Texas, and Angela had a five-year-old daughter, A.W., from
> a previous relationship. In 2003, Angela and the defendant had their own
> daughter and then married. The defendant, a roofer, went alone to Florida and
> then to Louisiana to find work. Around 2006, Angela and her daughters left
> Texas to join the defendant, who had settled in Bush, Louisiana. The family
> lived in a camper, owned by Gerald Spell, who defendant met in 2005 and with
> whom he did roofing work. The family later moved out of the camper and into
> a trailer on Home Lane, also in Bush. The family later moved back to a trailer
> on Mr. Spell's property.
>
> In 2009, A.W. was in the fifth grade at Fifth Ward Junior High School in
> Bush when a school counselor showed her class a video on "good touches" and
> "bad touches." After watching the video, A.W. told the counselor that the
> defendant, her stepfather, had been inappropriately touching her. Authorities
> were brought into the matter. A.W. was taken to the Children's Advocacy
> Center (CAC) in Covington, where she disclosed in an interview that the
> defendant had been sexually busing her for several years, beginning when she
> was about six years old and lived with her mother and the defendant in Texas.
> A.W. disclosed to Jo Beth Rickels, the CAC forensic interviewer, that on many
> occasions the defendant touched her breasts, buttocks, and vagina, and engaged
> in oral sexual intercourse with her; the defendant also made A.W. put her hand
> on his penis on several occasions. The CAC interview was played for the jury.
>
> The defendant testified at trial. He denied all of the allegations and
> stated that he never inappropriately touched A.W.

*State v. Perez*, Docket No. 15-KA-1070 (La. App. 1 Cir. 2015)

4

ISSUES PRESENTED

1.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO ASK FOR A MISTRIAL, OR AT LEAST TO DISQUALIFY TAINTED PANEL OF JURORS WHERE EXTRINSIC FACTS AND EVIDENCE TAINTED THE JURY POOL.

2.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO THE PREJUDICIAL USE OF INADMISSIBLE CSAAS EVIDENCE AT TRIAL.

3.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT AND ASK FOR A DIRECTED VERDICT WHEN THE ALLEGED VICTIM FAILED TO TESTIFY TO ALL ELEMENTS OF THE CRIME CHARGED.

4.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO RAISE ISSUE OF IMPEACHED TESTIMONY, STANDING ALONE, BEING UNCONSTITUTIONALLY USED TO OBTAIN CONVICTION.

5.    TRIAL COUNSEL FAILED TO OBJECT TO THE STATE'S USE OF OUT-OF-COURT TESTIMONIAL STATEMENTS OF THE ALLEGED VICTIM'S MOTHER IN VIOLATION OF *CRAWFORD V. WASHINGTON.*

6.    APPELLATE COUNSEL FAILED TO RAISE ISSUES ON APPEAL RELATED TO OBJECTIONS ON THE RECORD TO PROSECUTORIAL MISCONDUCT.

ARGUMENT

1.     INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO ASK
FOR A MISTRIAL, OR AT LEAST TO DISQUALIFY TAINTED PANEL OF JURORS WHERE
EXTRINSIC FACTS AND EVIDENCE TAINTED THE JURY POOL.

Petitioner contends that his federal and state constitutional rights to a fair and impartial trial was

violated and his conviction unconstitutionally obtained. In this case, before trial commenced and during

voir dire, one of the potential jurors, Mrs. Schuster, admitted that she worked for CASA. Subsequently,

Mrs. Schuster explained at sidebar that she was a victim of rape which led her to become a nurse in

sexual trauma, and to work with CASA.

Thereafter, the prosecutor posed questions to the jury panel regarding delayed disclosure, and

Mrs. Schuster started testifying about conflicting emotions of a child victim toward their abuser,

grooming of children by child molesters, changing dynamics in a child's mind, developed memories,

etc. (Tr. tran. pp. 409-414).

Trial counsel objected, but the judge did not even give the jury an admonishment or an

instruction.

> Mr. Burke:          He's coming close to trying to get the jurors to commit,
> to educate them, and give him things he's pretty much trying to try this case in
> his voir dire.
> The Court:          Mr. Dearing, you're getting (sic) getting pretty far along,
> Mr. Dearing.
> Mr. Dearing:        I think the Court recognizes that these cases have unique
> issues to deal with, that people bring strongly held beliefs with them in the
> courtroom that may or may not be accurate, and I'm simple (sic) trying to have
> those revealed to me so that I know what opinions they bring with them.
> The Court:          You're using also them to -- for example, the lady that
> been the trauma nurse in this particular area, she's almost testifying. I have no
> problem with you directing as to whether they have any particularized biases
> towards that, but you're asking them to give various possibilities and I think
> that's going over, especially given the fact that we've got a professional up

6

there.

Mr. Burke:            Thank you Judge.

(Tr. tran. pp. 415-417).

At this point, no admonition to the jury was given. Subsequently, the prosecutor began to question the jury in the same manner.

Mr. Burke:            Can we approach?

The Court:            Sure.

Mr. Burke:            Once again, we object to the questioning. Basically, he's trying to argue his case in jury voir dire.

Mr. Dearing:          I don't think I am.

The Court:            I think you are right now the way that you prefaced that. You're not asking them in the way of preconceived notions. You're asking them basically what is it, so I'm going to sustain the objection.

(Tr. tran. pp. 430-431).

The potential jurors were adversely affected, and assumed negative connotations and inferences toward Petitioner and presumed the allegations were true and that the accusing witness was a "victim". This is proven by the comments of the potential jurors during voir dire, and especially the "education" Mrs. Schuster gave to the others on the panel, and the rest of the jury venire in the courtroom, regarding delayed disclosure and other psychological phenomena that assumes guilt.

"Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public and impartial trial in the parish where the offense, or an element of the offense occurred . . . ."

Louisiana Constitution, Article I, § 16.

Not only was Petitioner prejudiced in the eyes of the first panel of jurors, but the comments made by the first panel of potential jurors were made in front of the entire jury venire. The entire jury venire was indisputably tainted by the influence of the jurors who were allowed to testify and to educate everyone in the courtroom. At that point, not a single potential juror could be deemed impartial, nor can it be said that a verdict would not be influenced by these circumstances. However,

7

trial counsel failed to challenge these tainted potential jurors, and allowed Petitioner to go to trial with a tainted jury.

> A defendant's constitutional due process right of fair trial by an impartial jury may be violated if the trial jurors are subjected to influences which cause their verdict to be influenced by circumstances other than the evidence developed at trial. *Turner v. Louisiana*, 379 U.S. 466, 472, 85 S.Ct. 546, 549, 13 L.Ed.2d 424 (1965); *State v. Marchand*, 362 So.2d 1090, 1092-1093 (La. 1978). In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel. *Turner v. Louisiana*, 379 U.S. at 473, 85 S.Ct. at 550.
>
> *        *        *        *
>
> Initially in any trial, there is a presumption of jury impartiality. *United States v. Winkle*, 587 F.2d 705, 714 (5th Cir.), *cert denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). However, any unauthorized communication, contact, or tampering directly or indirectly, made by a non-juror with a juror during a trial about a matter pending before the jury is deemed presumptively prejudicial, if not made in accordance with rules of court and the instructions and directions of the court made during the trial, with full knowledge of all the parties. The presumption is not conclusive, but the burden rests heavily upon the state to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to defendant. *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *State v. Marchand*, 362 So.2d at 1092. Prejudice may be shown by evidence that an extrinsic factual matter tainted the jury's deliberations. Thus, an adequate demonstration of extrinsic influence upon the jury overcomes the presumption of jury impartiality and shifts the burden to the state to show that the influence demonstrated was not prejudicial. *United States v. Okeefe*, 722 F.2d 1175, 1179 (5th Cir. 1983); *United States v. Howard*, 506 F.2d 865, 869 (5th Cir. 1975); *State v. Snegal*, 393 So.2d 684, 687 (La. 1981).

*State v. Collins*, (La. App. 5 Cir. 2002), 833 So.2d 476, *quoting State v. Bibb*, 626 So.2d 913, 922 (La. App. 5 Cir. 1993), *writ denied*, 93-3127 (La. 9/16/94), 642 So.2d 188:

Petitioner contends that outside influences other than the evidence introduced during trial prejudicially influenced the jury to arrive with their verdict of guilty. The record is clear in this case,

8

and the law mandates that Petitioner be given a new trial.

> If there is a reasonable possibility that extraneous information
> considered by the jury affected its verdict, a new trial is mandated. *United
> States v. Winkle*, 587 F.2d 705 (5 Cir. 1979); *Farese v. United States*, 428 F.2d
> 178 (5 Cir. 1970). It is difficult to rebut the likelihood of prejudice. *State v.
> Wisham, supra.*
>
> "...[T]he actual impact upon the jury of such evidence cannot be
> accurately measured or ascertained .... Consequently, it is a useless exercise
> even to ask jurors whether such evidence in fact affected their verdict." *United
> States v. Vasquez*, 597 F.2d 192 at 193 (9 Cir. 1979).
>
> *State v. Sinegal*, 393 So.2d 684 (La. 1981).

Petitioner's right to an unbiased jury was not honored at trial. Petitioner had a right to have "all evidence developed against him" come from the witness stand.

*Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) at 727-728, "The influence that lurks in an opinion once formed is so persistent that it unconsciously fights detachment from the mental processes of the average man."

## 2.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT TO THE PREJUDICIAL USE OF INADMISSIBLE CSAAS EVIDENCE AT TRIAL.

Trial counsel failed to object to the prejudicial use of inadmissible CSAAS evidence at trial, and failed to call for a *Daubert* hearing on the issue. The trial court went against *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *State v. Foret*, 628 So.2d 1116 (La. 1993), in order to allow testimony regarding Child Sexual Abuse Accommodation Syndrome (CSAAS). This testimony squarely addresses the credibility of the accusing witness. The *Foret* court found that the bolstering of the alleged victim's credibility was an improper comment that served to unduly prejudice the defendant, and was not harmless error, reversing the conviction.

"Bolstering" is the practice of offering evidence solely for the purpose of enhancing a witness' credibility before that credibility is attacked. *U.S. v. Lindermann*, 85 F.3d 1232 (7th Cir. 1996).

Additionally, credibility testimony has the effect of, "putting an impressively qualified expert's stamp of truthfulness" on a witness' testimony." *Foret*, at 1129. This also goes for witnesses other than the accusing witnesses, by bolstering their credibility before it is attacked and before they ever get on the stand.

The trial court allowed Dr. Yameika Head to be qualified as "an expert in the field of child abuse pediatrics and general pediatrics", (Tr. tran. p. 785), despite the fact that she did not have the proper certification to do so. The American Medical Association does not recognize the field of "child abuse pediatrics." Further, she testified regarding the psychological phenomenon of "delayed disclosure," and Dr. Head is neither a psychiatrist, nor a psychologist.

After the trial court accepted Dr. Yameika Head as an expert in the field of child abuse pediatrics and general pediatrics. (Tr. tran. p. 785), the State asked the doctor:

> Q.    Okay. I just wanted to make sure of that.
>
> Now, let me start going into some of the aspects of child   abuse pediatrics that you are an expert and can help perhaps explain certain matters to us and phenomenon and certain concepts.
>
> If I mention the concept of "delayed disclosure," are you familiar with that term?
>
> A.    Yes.
>
> Q.    What does that refer to?
>
> A.    So delayed disclosure is something that we use to describe how children disclose about child maltreatment. What we have found out is that children don't come right out and say that they have been abused, and there's lots of reasons as to why. Reason is either they are naive, they don't know that they are supposed to tell that the things that are happening to them are wrong.
>
> A lot of times they are threatened and they are also bribed   not  to  tell about the things that are happening. And some others have to do with that, you know. if they went along with different things, they feel guilty or feel embarrassed when they find out that the things that happened to them are wrong, so they don't want to tell.
>
> Other things are, you know, the person that may have done things to them is a close person to them and so they don't want to really get that person in trouble, they just really want that abuse to really stop.

10

So lots of different reasons why kids don't just come right out and tell
what's going on and that's what we get with delayed disclosure.
(Tr. tran. pp. 785-786).

Additionally, Dr. Head's testimony was that the alleged victim's physical exam, which revealed

nothing in the way of abuse, was consistent with Ally's story that she had in fact been abused. (Tr.T.,

pp. 793-796).

The jury obviously put much stock in this testimony, using it to convict the Petitioner of

aggravated rape. Because the trial court's ruling constituted plain error in qualifying Dr. Head as a child

abuse expert testifying as to psychological phenomena, and the opinion she presented was used by the

jury to reach the conclusion that Petitioner was guilty, the convictions and sentences should be set

aside.

An argument may also be made that any claim of "certification" in the "field of child abuse

pediatrics" is a sham. This field is not new, but merely has been renamed each time it is presented

before the American Medical Association which refuses to endorse it under any name. Medical doctors

cannot and should not treat or make diagnoses of psychological phenomena. Medical doctors diagnose

and treat physical ailments and injuries, the only area of their training and expertise. The question

naturally arises, who is it that endorses this field and "certifies" someone in it?

The fact still remains that she was not certified in this field, whether legitimate or not. The only

thing the trial court did was to help the State bolster the credibility of the alleged victim, and allow the

jury to be led to believe she was not simply a generic pediatrician, but was a "child abuse expert," in a

nonexistent field, bolstering her testimony and ultimate conclusion that a lack of evidence can be

considered as evidence of abuse, besides testifying to psychological issues beyond pediatric medicine.

If the jurors had any misgiving about the credibility of the testimony of the alleged victim, Dr.

Head's erroneously admitted testimony as a child abuse expert clearly would have been the determining

11

factor that pushed them to convict.

Because it was plain error on the face of the record for the trial court to qualify Dr. Head as an expert in Child Abuse Pediatrics, the convictions and sentences should be reversed.

Further, there should have been a full and complete *Daubert* hearing concerning the fact that Dr. Head was accepted as an "expert" in what was formerly known as "forensic pediatrics" and, according to Dr. Head, is now called "child abuse pediatrics." Whether called "forensic therapy," as it once was, "forensic pediatrics" or "child abuse pediatrics," it is not a recognized field in pediatric science by the American Medical Association. See, *State v. Ross,* 28 So.3d 640 (La. App.5 Cir.11/24/09).

The name keeps changing to keep ahead of full and fair scrutiny so that these proponents of Child Sexual Abuse Accommodation Syndrome (CSAAS), which does not meet the criteria under *Daubert* (see, *State v. Foret,* 628 So.2d 1116 (La.1993)), can continue to impose their shunned dogma. The *Foret* Court found that **opinions based on CSAAS were of dubious reliability, even by trained psychologists; it is a clinical opinion, not a scientific instrument, and it is not intended as a diagnostic devise. Rather, it assumes abuse in order to explain a child's reaction to it.** Further, the *Foret* Court found the "known or potential rate of error" quoted in the literature to be far too high to meet the *Daubert* criteria: "While Dr. Faller might have been content with a 32% margin of error, we are not so comfortable, especially remembering that '[t]he integrity of the criminal trial process is too important to permit it to be compromised by the admission of dynamic speculations.'" *Id.* at 1126.

In *Foret,* the Louisiana Supreme Court adopted the standards set forth in *Daubert v. Merrel Dow Pharmaceuticals, Inc., supra*; (See also, *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)), to determine the proper standards for the admissibility of expert testimony which requires the trial court to act in a gate-keeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable, and in conformity with Louisiana Code of Evidence, Article 702.

12

Louisiana Code of Evidence, Art. 702 states in pertinent: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." This is after it has been determined that the testifying person(s) are actually *certified* in the testified to field, and the field has been found to be reliable.

Petitioner contends that without a *Daubert* hearing, Dr. Head's testimony should not have been admissible, and that "child abuse pediatrics" does not meet the *Daubert* criteria any more than this same "field" did under any of its previous names. *State v. Foret, supra*. Petitioner maintains that such testimony was prejudicial, highly inflammatory and damaging to his defense, especially in light of the fact that Dr. Head was accepted as an expert in a field that is **not** a recognized sub-specialty of pediatric medicine.

The judge was required to determine the "Testability" of the expert's theory, whether it has been subject to peer review, its rate or potential rate of error, and whether it is generally accepted in the scientific community. Had this happened, it would have been found that Dr. Head's "Child Abuse Pediatrics" would fail to meet the *Daubert* criteria. That is because it is the very same "diagnostic devise" already considered in *Foret, supra*, and found to fall short in many respects by that court over twenty years ago. The *Foret* court found CSAAS to be unreliable, testability had a 32% margin of error which is far too high, and assumed abuse rather than diagnose it.

It is all the more prejudicial that other "experts" were also allowed to testify regarding delayed disclosure and other CSAAS phenomena. Dr. Julie Kringas was accepted by the trial court as "an expert in the field of counseling of child victims of sexual abuse," ("child victims", not alleged child victims), and testified to delayed disclosure and other CSAAS phenomena. Jobeth Rickels was accepted by the trial court "as an expert in forensic interviewing of children," and testified to delayed

13

disclosure and other CSAAS phenomena. Even a potential juror who was a "sexual abuse nurse" was allowed to "educate" the jury on delayed disclosure during voir dire, as was the prosecutor, Mr. Bruce Dearing's, intention. It was the State's theory, not any psychologists or psychiatrists whatsoever. The prosecutor elicited this CSAAS evidence before the trial even began.

None of the "experts" who testified to this psychological phenomena are psychologists or psychiatrists and are not qualified to deal with mental conditions. Indeed, there is no psychologists or psychiatrists that ever actually diagnosed the alleged victim as having CSAAS at any time.

The whole CSAAS issue was reviewed by the Louisiana Supreme Court and was found lacking, as it did not pass the *Daubert* criteria. See, *Daubert v. Merrel Dow Pharmaceuticals, Inc., supra.* Therefore, it should not have been utilized by the State at Petitioner's trial to bolster the credibility of the alleged victim, and to assume she was a "victim" rather than an alleged victim who brought forth an accusation. It is the province of the jury to decide, after admissible evidence is presented, whether the accusing witness is a victim and whether the accused is innocent or guilty. The CSAAS evidence assumes guilt from the start, invaded the province of the jury, and prejudiced Petitioner.

There remains more than a reasonable probability that, without the damaging testimony of Dr. Head and the other "experts", the outcome of the trial would have been different. Indeed, the very fact that this testimony was allowed at all is highly prejudicial to any defendant at his trial.

Petitioner contends that in the interest of due process, that the merits of this claim warrants a reversal of his conviction and sentence, or, in the alternative, that an evidentiary hearing be held to address the claims raised herein.

14

3.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO
OBJECT AND ASK FOR A DIRECTED VERDICT WHEN THE ALLEGED VICTIM FAILED TO
TESTIFY TO ALL ELEMENTS OF THE CRIME CHARGED.

It is well established that the burden of proving beyond a reasonable doubt every element of the
crime charged rests solely with the State, which must affirmatively meet its burden. Louisiana
Constitution, Article 1, § 16; La. R.S. 15:271; *State v. Prestridge*, 399 So.2d 564 (La.1981); *State v.
Prestridge*, 339 So.2d 1194 (La. 1976).

Petitioner contends that the alleged victim failed to testify to all of the elements of the charged
crime, thus, the State failed in their burden to prove each element of the charged crime beyond a
reasonable doubt. Further, once this became obvious after the State rested its case, trial counsel failed
to object and ask for a directed verdict of not guilty.

The elements of the crime of rape are defined in La. R.S. 14:41, which states in pertinent part:

A. Rape is the act of anal, oral, or vaginal sexual intercourse with a
male or female person committed without the person's lawful consent. . . .
C. For purposes of this Subpart, "oral sexual intercourse" means the
intentional engaging in any of the following acts with another person:
(1) The touching of the anus or genitals of the victim by the offender
using the mouth or tongue of the offender.

The elements of the crime of aggravated rape (first degree rape) are included in La. R.S. 14:42,
which states, in pertinent part:

A. First degree rape is a rape committed upon a person sixty-five years
of age or older or where the anal, oral, or vaginal sexual intercourse is deemed
to be without lawful consent of the victim because it is committed under any
one or more of the following circumstances: . . .
(4) When the victim is under the age of thirteen years. Lack of
knowledge of the victim's age shall not be a defense.

In closing arguments, the prosecutor also stated:

15

> Aggravated rape is defined as vaginal, anal, or oral sexual intercourse that is deemed to be without the lawful consent because the victim was under the age of 13. Not a very wordy definition, obviously. So let's look at that in two parts: First of all, the age component. We know that Ally was under the age of 13 when this abuse occurred because she was 11 when she made the disclosure, so that element has obviously been satisfied.
>
> The next is vaginal, oral - - excuse me, vaginal, anal, or oral sexual intercourse. There's been no allegation, of, of penetration that would constitute vaginal or anal intercourse involving Mr. Perez' penis.
>
> This particular case, what did occur here was oral sexual intercourse. And that can occur in two different ways, and we actually had it both ways in this particular case.
>
> Oral sexual intercourse is defined as the touching of the anus or the genitals of the victim by the offender using the mouth or tongue of the offender. And the genitals commonly refers to the reproductive organs of either the male or female, usually the external parts of the reproductive system.
>
> Ally disclosed that her stepfather, Mr. Perez, used his tongue to touch her butt crack. She also disclosed that he used his tongue to touch her vagina. Each of those constitutes oral sexual intercourse.

(Tr. tran. pp. 1057-1058).

The definition of genitalia, (plural of genital), is, "The reproductive organs, esp. the external sex organs." Webster's II New Riverside University Dictionary: Boston, MA Houghton-Mifflin.

The genitalia are the sexual organs. In the female, the clitoris, labia (labium major, labium minor), and vaginal opening are the external sexual organs. These are all contained within the "middle," and outside of that area is the Mons, which is not part of the genitalia.

Further, the "butt crack" is not the anus, which is, "The excretory opening of the alimentary canal." Webster's II New Riverside University Dictionary: Boston, MA Houghton-Mifflin.

The butt crack is actually made by the abutment of the two round, fleshy parts of the rump. The "crack" formed, unlike the "middle" of the vagina, does not contain the anus, rather the anus is found where the butt crack ends, near the vaginal opening, and separated from the vaginal opening by the perineum. It can not be assumed that touching the butt crack involves touching the anus since they are

16

two separate and distinct things.

However, the prosecutor told the jury in closing arguments that:

> There were two specific areas where Ally described behavior by the defendant that meets the definition of aggravated rape here in the state of Louisiana. In her interview with Ms. Rickles, at 4:48 p.m. and 48 seconds, Ally talked about how when the defendant would lick the outer part of her vagina, he would ask her one day if he could lick the middle part. And you don't -- the middle part, it's not necessary that the middle part be the portion that was licked to make it oral sex. It can be any portion of the genitalia. So there you've got one example of aggravated rape.
>
> There was a particular detail that Ally went into with Dr. Head where she talked about the defendant stuck his tongue up her butt crack and it would feel very nasty, wet and very uncomfortable and that that had happened more than one time. That, by itself, is aggravated rape.

(Tr. tran. p. 1085)

It is clearly a mischaracterization and erroneous interpretation of the law for the prosecutor to state that "And you don't -- the middle part, it's not necessary that the middle part be the portion that was licked to make it oral sex. It can be any portion of the genitalia." All portions of the genitalia (the sexual organs) are contained in the middle part, (crack or cleft), between the Mons, the two fleshy protuberances caused by the pubic bones that surround the genitalia. Therefore, if someone touches the Mons, but not the middle part, they are not touching the "genitalia," a necessary element of the charged crime.

This was told to the jury after the prosecutor had previously explained that the sexual organs were, "usually the external parts of the reproductive system." The external parts of the reproductive system are always in the middle, between the Mons. Petitioner was accused of touching with his tongue the Mons, not the genitalia.

Alternatively, touching the butt crack, the part between the two sections of rump, does not constitute touching the anus, a necessary element of the charged crime. Petitioner was accused of

17

touching with his tongue the "butt crack," not the anus.

The alleged victim's accusations did not encompass the elements of rape, much less aggravated rape. Indeed, the alleged victim told different people different things. On cross-examination of the State's expert witness, Dr. Yameika Head, she testified that the alleged victim stated:

> Q.    And you were able to gain a degree of rapport with her or trust with her; is that right?
> A.    Yes.
> Q.    And did she appear to be comfortable with you throughout the interview?
> A.    She appeared, she seemed to be comfortable and she was very forthcoming when I asked different questions and, you know, she made sure if I got something wrong, she corrected me to make sure that I truly understand what was going on.
> Q.    So she didn't appear to hold back on any of her statements to you at all, she pretty much told you everything that she believed that happened to her?
> A.    I think she was pretty forthcoming.
> Q.    Now, in the interview she told you that the defendant, or Hector Perez, her stepfather, touched her with her (sic) hands; is that right?
> A.    Yes.
> Q.    In her private areas; is that right?
> A.    Yes.

(Tr. tran. pp. 797-798).

At trial, the alleged victim failed to testify to each element of the charged crime of aggravated rape. This includes the video evidence, and the several State experts called to the stand. Trial counsel failed to object once the State rested its case without proving the necessary elements of the charged crime, and failed to ask for a directed verdict of not guilty. Trial counsel's ineffective assistance of counsel violates Petitioner's rights under the United States Constitution, Amendments 6, and 14, and the Louisiana Constitution, Article 1, § 13

18

4.    INEFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO
RAISE    ISSUE    OF    IMPEACHED    TESTIMONY,    STANDING    ALONE,    BEING
UNCONSTITUTIONALLY USED TO OBTAIN CONVICTION.

While the credibility of a witness is a matter for the finder of fact, once impeached, that

witness's testimony becomes suspect under the law and must be corroborated in order to be convincing

evidence of guilt or innocence. This is especially true where the credibility of the witness is paramount

to the outcome of the case.

In *State v. Kennedy*, 803 So.2d 916 (La. 2001), in Justice Traylor's dissenting opinion, it is

stated that the Louisiana Supreme Court has found that, "The victim's testimony, standing alone, can

prove that the act occurred, . . ." but is qualified in FN9, "However, we have also ruled post-trial that

impeached testimony of a witness, standing alone, cannot prove the offense."

Impeached testimony, as a general rule, cannot stand alone to convict. *State v. Chism*, 591 So.2d

383, 386 (La. App. 2 Cir. 1991), citing *State v. Laprime*, 437 So.2d 1124 (La. 1983); *State v. Lott*, 535

So.2d 963 (La. App. 2 Cir. 1988).

To one of the State's many experts, the alleged victim stated that there was a witness to the

alleged acts against her. To a different expert, she claimed there was no witness to the alleged abuse.

To one expert, she stated that there was semen emitted from Petitioner's penis. To another

expert, she stated that there was never any emission of semen.

To one expert she stated that she was always abused in her room. To another expert, she stated

that Petitioner would sometimes come to her room and carry her to his room to abuse her.

The trial record shows that the trial testimony of the accusing witness is impeached testimony.

There is no corroboration of any of her accusations. Since her testimony is the only evidence against

Petitioner, it is clearly insufficient, standing alone, to sustain this conviction. Further, it underscores the

value of the *Brady* evidence withheld from Petitioner when the grand jury testimony of this witness

19

was suppressed.

There can be no strategic decision in this case where the evidence was presented, then not utilized properly by trial counsel. It was clearly an omission that prejudiced Petitioner at his trial, and is a violation of the United States Constitution, Amendments 5, 6, and 14, and the Louisiana Constitution, Article 1, §§ 2 and 13.

The United States Fifth Circuit Court of Appeal recognizes the distinction between strategic judgment calls and plain omissions; *Loyd v. Whitley*, 977 F.2d 149, 158 (5th Cir. 1992), and has further stated that the court is "not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all." *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999).

Trial counsel failed to raise issue of impeached testimony, standing alone, being unconstitutionally used to obtain conviction, even though he was the one who brought out the impeachment evidence at trial. This is clearly ineffective assistance of counsel.

5.    TRIAL COUNSEL FAILED TO OBJECT TO THE STATE'S USE OF OUT-OF-COURT TESTIMONIAL STATEMENTS OF THE ALLEGED VICTIM'S MOTHER IN VIOLATION OF *CRAWFORD V. WASHINGTON.*

The prosecutor elicited from State witnesses the out-of-court testimonial statements of Angela White Perez, the alleged victim's mother, and further used her statements in opening and closing arguments. However, Angela White Perez was not called to the stand at trial by the State either before or after placing this testimonial evidence before the jury, in violation of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

Trial counsel made a hearsay objection which the judge overruled. (Tr. tran. pp. 812-813 & 817-819). This allowed Jayme Anderson, the original case detective, to testify for Angela White Perez by

proxy, (Tr. tran. pp. 812-821), which is a direct violation of *Crawford, supra*.

Further, trial counsel objected to double hearsay, which the judge overruled, when the State sought to have Jackie Nettles, a school counselor, testify to out-of-court statements made by Ms. Perez to her Daughter, Ally, the alleged victim in this case. (Tr. tran. pp. 894-895). After trial counsel objected to double hearsay, the judge stated:

> The Court:    I'm going to overrule the objection.
> Mr. Burke:    Not because it's from Ally, it's from the mother, it's what, what the mother said to Ally.
> The Court:    That made her upset, that made her do this utterance, and I'm going to overrule the objection.

However, the United States Supreme Court holds that:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." Certainly none of the authorities discussed above acknowledges any general reliability exception to the common-law rule. Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.

*Crawford*, at 1370.

Angela White Perez did not believe that her daughter was telling the truth about being abused by Petitioner. The case detective, Jayme Anderson, admits that she never investigated the claims of Ms. Perez. It was in the interest of the State to assassinate Ms. Perez' character, and present her to the jury as an unfit mother and a liar in cahoots with Petitioner.

The entire investigation was conducted with an improper animus. It may have been discovered that Ms. Perez was correct about her daughter lying, but the investigation proceeded from the very

21

outset as though the bald accusations were completely true, and no other theories or avenues of investigation were ever considered.

Clearly, trial counsel should have immediately objected to this erroneously introduced evidence as being a violation of the Confrontation Clause. This was also immaterial evidence produced before the jury, and was subject to a mandatory mistrial under La.C.Cr.P. Art. 770. Again, trial counsel failed to ask for one.

The prosecutors statements regarding Angela White Perez' credibility conveyed the impression to the jury that they should simply trust the States judgment that Ms. Perez was not telling the truth; that she did not really believe the victim was lying.

However, Angela White Perez was never called to the stand to take up for herself, and her out-of-court statements were used against Petitioner without an opportunity to cross-examine the witness, and no prior opportunity to do so.

> "The State dropped a skunk into the jury box. Defense counsel made no serious
> effort to either identify it as a skunk, have it removed, or have the jury
> instructed to disregard its presence. We cannot in reason conclude that the jury
> did not consider this inadmissible, improper, highly prejudicial testimony . . .".
> *Vela v. Estelle*, 708 F.2d 954, 966 (5th Cir. 1983).

Defense counsel 1) allowed it to be introduced; 2) failed to object, and at the least, ask for a curative instruction, which allowed the jury to consider it; and 3) counsel's failure to object jeopardized the issue on direct appeal. *Vela v. Estelle, supra*, at 966.

See also, *State v. Bolden*, 103 So.3d 377, 2011-237 (La. App. 3 Cir. 10/5/11):

> The Sixth Amendment to the U.S. Constitution provides the defendant "[i]n all
> criminal prosecutions . . . shall enjoy the right . . . to be confronted with the
> witnesses against him." The Supreme Court has identified a "core class of
> 'testimonial' statements" which equate to a witness who bears testimony
> against an accused. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354,
> 1364,, 158 L.Ed.2d 177 (2004). Those statements include:

22

"[E]x parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorally," . . . "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," . . . [and] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Id.* (quoting in part *White v. Illinois*, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). The court noted testimonial statements are admissible when the witness is absent from trial "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." (footnote omitted). *Id.* at 1369. Thus, the Confrontation Clause requires "not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination."

*Id.* at 1370.

Additionally, by erroneously attacking Ms. Perez' character, the prosecutor was improperly attacking Petitioner's character as being in collusion with Ms. Perez to cover up the abuse alleged by Ally, in order to paint Petitioner as a "bad person" and diminish his credibility.

*State v. Brunet*, 521 So.2d 594, 597 (La.App. 1 Cir. 1988):

In a case wherein there is no corroboration on either side, the importance of the defendant's credibility becomes so significant that prosecutorial error attacking that credibility cannot be harmless beyond a reasonable doubt. See *Velarde v. Shulsen*, 757 F.2d 1093 (10th Cir. 1985). See also *Passman v. Blackburn*, 797 F.2d 1335 (5th Cir. 1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1609, 94 L.Ed.2d 794 (1987). Where the very essence of a case is the jury's evaluation of defendant's credibility, the admission of tainted evidence cannot be considered harmless. *Velarde v. Shulsen, supra*; *State v. Vessel*, 450 So.2d 938 (La. 1984).

Therefore, Petitioner has been denied effective assistance of counsel where Petitioner was prejudiced at his trial when out-of-court testimonial statements were used against him at his trial

23

without objection by counsel. Trial counsel's ineffective assistance of counsel violates Petitioner's rights under the United States Constitution, Amendments 6, and 14, and the Louisiana Constitution, Article 1, § 13

6.    APPELLATE COUNSEL FAILED TO RAISE ISSUES ON APPEAL RELATED TO OBJECTIONS ON THE RECORD TO PROSECUTORIAL MISCONDUCT.

Petitioner avers his conviction and sentence were obtained in violation of his rights under the United States Constitution, Amendments 5, 6, 8, and 14, the Louisiana Constitution, and Louisiana Statutory Law, as a result of knowing and intentional Prosecutorial Misconduct.

When presenting a claim of prosecutorial misconduct, Petitioner must show that the actions of the prosecutor so infected the trial with unfairness as to make the resulting conviction a denial of Due Process, and "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001); *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The Supreme Court has recognized that prosecutorial misconduct may 'so infect the trial with unfairness as to make the resulting conviction a denial of Due Process. *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987)(quoting *Donnelly v. DeChristophoro*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The appropriate standard of review is the narrow one of Due Process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

Petitioner avers that this case clearly shows that the Prosecutorial Misconduct presented herein so infected the trial with unfairness that he was denied Due Process, and the misconduct was of sufficient magnitude to result in the denial of a fair trial.

During the State's closing argument, the prosecutor called the defendant a "demon." This was

24

objected to, however, no curative instruction was given to the jury by the trial judge.

> Well, you 12 citizens are not powerless here today. You have the ability to
> restore that child's faith in the human race, to tell her that it's over, that she's
> safe and that her demon is gone. Thank you.

(Tr. tran. pp. 1086-1087).

The objection was that it is improper for the prosecutor to ask the jury to "restore" Ally, as well
as to refer to the defendant as a "demon." Further, the prosecutor stated,

> This case boils down – it's very simple to what this case boils down to: Do you
> believe Ally or do you believe him? That's what this case boils down to.

(Tr. tran. p. 1075).

What every criminal trial is supposed to boil down to, is whether or not the State proves each
element of the charged crime beyond a reasonable doubt. It's the State's burden, not Petitioner's. After
impermissibly attacking Petitioner's character, this is doubly prejudicial, and clear prosecutorial
misconduct.

The prosecutor stated that defense attorneys were, "they're trained to try to divert your
attention," and defense counsel objected, which was overruled by the trial judge. The prosecutor then
went on to state that, "Mr. Burke is among the best attorneys in the building. And I'll concede right
now that if you-all's chore at the conclusion of this trial was to go back in this room and deliberate and
vote on who is the better lawyer, I'll lose, I'll lose that vote." (Tr. tran. pp. 1076-1077).

It is improper to make personal references to the skill, or lack thereof, of opposing counsel.
*State v. Duplessis*, 457 So.2d 604 (La. 1984). These prejudicial remarks clearly exceed the scope of
closing arguments. *State v. Hamilton*, 356 So.2d 1360 (La. 1978). Also, this trial was a swearing
contest, the evidence was not even close to overwhelming, and the comments were not invited by the
defense. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464 (1986). It is also clear that this was
pronounced and persistent misconduct. *Felde v. Blackburn*, 795 F.2d 400 (5th Cir. 1986).

Petitioner also contends that since the evidence against him was not overwhelming, the

25

prosecutor's prejudicial remarks were not harmless. *U.S. v. Hastings*, 461 U.S. 499, 103 S.Ct. 1974 (1983); *State v. Bretz*, 394 So.2d 245 (La. 1981).

Further, the prosecutor called witnesses with the only purpose being to bolster the credibility of the alleged victim, and to presuppose Petitioner's guilt. In closing argument, the prosecutor stated to the jury that, "Dr. Kringas is not a forensic interviewer. Her purpose for counseling this child is not for courtroom use. It's to repair the harm, the damage that's been done to that child." (Tr. tran. p. 1081). This presupposes abuse of the alleged victim which needed to be repaired, thus presupposing guilt of the accused as causing that damage.

Statements in closing argument that presuppose defendant's guilt can be the sort of foul blows long held improper. *United States v. Tomblin*, 42 F.3d 163 (5th Cir. 1994). Prosecutor's closing argument may be grounds for reversing a conviction. *Bell v. Evatt*, 72 F.3d 421 (4th Cir. 1995). Petitioner requests that accumulation of errors also be considered by this Honorable Court as grounds for a new trial. *Latiolais v. Whitley*, 93 F.3d 205 (5th Cir. 1996).

## CONCLUSION

Wherefore, Petitioner submits the instant Petition for Writ of Habeas Corpus by a person in State custody and a Memorandum in Support attacking his unlawful custody.

Petitioner maintains that ineffective assistance of counsel, along with errors of the trial judge and state courts, deprived Petitioner of his rights to effective assistance of counsel, due process, equal protection of the laws, compulsory process for obtaining witnesses in his favor, right to judicial review based on a complete record, and access to the courts. United States Constitution, Amendments 5, 6, and 14, Louisiana Constitution, Article 1, §§ 2, 3, 13 16, 19 and 22.

Petitioner asserts viable claims, of which he has pointed to sufficient record evidence, and is entitled to Habeas Corpus Relief. After full review of the record and pleadings contained herein, this Honorable Court should grant Petitioner the requested Habeas Corpus Relief of an Order of Acquittal, or, at least, ordering Petitioner's case remanded for a new trial. Alternatively, this case should be remanded for an Evidentiary Hearing.

Additionally, Petitioner asks that this petition be subject to the grounds of accumulation of errors as the basis for a new trial. *Lattolais v. Whitley*, 93 F.3d 205 (5th Cir. 1996).

Respectfully submitted, *pro se*, this ___02___ day of September, 2020.

Hector Perez #63____
M.P. - Hickory 3
LA State Prison
Angola, LA 70712

27

VERIFICATION / CERTIFICATE OF SERVICE

I, Hector Perez, the aforementioned Petitioner, do hereby attest and affirm that the information contained herein is true to the best of my knowledge and belief. Further, I verify that all allegations in the foregoing are those of Hector Perez.

Additionally, I hereby certify that a copy of the foregoing has this date been placed in the federal mailbox at this institution to be scanned and electronically filed in this Court, and a copy has been sent, via U.S. Mail, postage prepaid and properly addressed to:

Warren Montgomery, District Attorney
22nd Judicial District, Justice Center
701 N. Columbia St.
Covington, LA 70433

Done and signed this _02_ day of September, 2020, at Angola, Louisiana.

Hector Perez #632518
M.P. - Hickory 3
LA State Prison
Angola, LA 70712

IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HECTOR PEREZ

        *Petitioner*

*Versus*

DARREL VANNOY, Warden
Louisiana State Prison

        *Respondent*

Civil Action

Case No.: _____

Section: _____

Judge: _____

APPENDICES

Appendix A   08/14/20     Louisiana Supreme Court Denied PCR

Appendix B   07/23/18     Louisiana First Circuit Denied PCR

Appendix C   03/03/17     Louisiana Supreme Court Denied Direct Appeal

Appendix D   12/23/15     Louisiana First Circuit Denied Direct Appeal

APPENDIX A

WESTLAW

**State v. Perez**
Supreme Court of Louisiana.    August 14, 2020    — So.3d —    2020 WL 4727300 (Mem)    2019-01958 (La. 8/14/20)    *(Approx. 1 page)*

2020 WL 4727300
Supreme Court of Louisiana.

STATE of Louisiana

v.

Hector PEREZ

No. 2019-KH-01958
08/14/2020

IN RE: Hector Perez - Applicant Defendant; Applying For Supervisory Writ, Parish of St. Tammany, 22nd Judicial District Court Number(s) 472557, Court of Appeal, First Circuit, Number(s) 2019 KW 0946;

**\*1 ON SUPERVISORY WRITS TO THE TWENTY-SECOND JUDICIAL DISTRICT COURT, PARISH OF ST. TAMMANY**

**Opinion**

PER CURIAM:

Writ application denied. See per curiam.

Denied. Applicant fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Applicant has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, *see* 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Applicant's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, applicant has exhausted his right to state collateral review. The district court is ordered to record a minute entry consistent with this per curiam.

**All Citations**

--- So.3d ----, 2020 WL 4727300 (Mem), 2019-01958 (La. 8/14/20)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**End of**          © 2020 Thomson Reuters. No claim to original U.S. Government Works.
**Document**

THOMSON REUTERS
Thomson Reuters is not providing legal advice

APPENDIX B

WESTLAW

**State v. Perez**
Court of Appeal of Louisiana, First Circuit.   September 30, 2019   Not Reported in So. Rptr.   2019 WL 4751564   2019-0946 (La.App. 1 Cir. 9/30/19)   *(Approx. 1 page)*

2019 WL 4751564

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Appeal of Louisiana, First Circuit.

STATE of Louisiana
v.
Hector PEREZ

NO. 2019 KW 0946
SEPTEMBER 30, 2019

In Re: Hector Perez, applying for supervisory writs, 22nd Judicial District Court, Parish of St. Tammany, No. 472557.

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

**Opinion**
*1 WRIT DENIED.

**All Citations**

Not Reported in So. Rptr., 2019 WL 4751564, 2019-0946 (La.App. 1 Cir. 9/30/19)

---

**End of**            © 2020 Thomson Reuters. No claim to original U.S. Government Works.
**Document**

WestlawNext. © 2020 Thomson Reuters

THOMSON REUTERS
Thomson Reuters is not providing legal advice

APPENDIX C

WESTLAW

**State v. Perez**
Supreme Court of Louisiana.    February 3, 2017    215 So.3d 695 (Mem)    2016-0176 (La. 2/3/17)    (Approx. 1 page)

215 So.3d 695 (Mem)
Supreme Court of Louisiana.

STATE of Louisiana

v.

Hector J. PEREZ

NO. 2016–KO–0176
February 3, 2017

Applying For Writ of Certiorari and/or Review, Parish of St. Tammany, 22nd Judicial District
Court Div. E, No. 472,557; to the Court of Appeal, First Circuit, No. 2015 KA 1070;

**Opinion**
*1 Denied.

**All Citations**

215 So.3d 695 (Mem), 2016-0176 (La. 2/3/17)

---

**End of**              © 2020 Thomson Reuters. No claim to original U.S. Government Works.
**Document**

WestlawNext. © 2020 Thomson Reuters
                                                                THOMSON REUTERS
                                                     Thomson Reuters is not providing legal advice

# APPENDIX D

WESTLAW

**State v. Perez**
Court of Appeal of Louisiana, First Circuit.   December 23, 2015   Not Reported in So.3d   2015 WL 9464512   2015-1070 (La.App. 1 Cir. 12/23/15)   *(Approx. 10 pages)*

2015 WL 9464512

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
NOT DESIGNATED FOR PUBLICATION
Court of Appeal of Louisiana,
First Circuit.

STATE of Louisiana
v.
Hector J. PEREZ.

No. 2015 KA 1070.
Dec. 23, 2015.

Appealed from the Twenty–Second Judicial District Court in and for the Parish of St. Tammany, State of Louisiana, Docket Number 472,557, Section "E", Honorable William Burris, Judge.

**Attorneys and Law Firms**

Kathryn Landry, Baton Rouge, Louisiana and Warren L. Montgomery, Covington, Louisiana, for State of Louisiana.

Sherry Watters, Louisiana Appellate Project, Hector J. Perez, New Orleans, Louisiana, for Defendant/Appellant.

Hector J. Perez, Angola, Louisiana, Pro Se.

Before McDONALD, McCLENDON, and THERIOT, JJ.

**Opinion**

McDONALD, J.

*\*1* The defendant, Hector J. Perez, was charged by grand jury indictment with aggravated rape of a victim under the age of thirteen years, a violation of LSA–R.S. 14:42. He pled not guilty and, following a jury trial, was found guilty as charged. He filed a motion for post-verdict judgment of acquittal, which was denied. The defendant was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. He then filed a motion to reconsider sentence, which was denied. The defendant now appeals, designating three counseled assignments of error and twelve pro se assignments of error. We affirm the conviction and sentence.

**FACTS**

In 2002, Angela Perez became involved in a relationship with the defendant. They were living in Texas, and Angela had a five-year-old daughter, A.W.,[1] from a previous relationship. In 2003, Angela and the defendant had their own daughter and then married. The defendant, a roofer, went alone to Florida and then to Louisiana to find work. Around 2006, Angela and her daughters left Texas to join the defendant, who had settled in Bush, Louisiana. The family lived in a camper, owned by Gerald Spell, who defendant met in 2005 and with whom he did roofing work. The family later moved out of the camper and into a trailer on Home Lane, also in Bush. The family later moved back to a trailer on Mr. Spell's property.

In 2009, A.W. was in the fifth grade at Fifth Ward Junior High School in Bush when a school counselor showed her class a video on "good touches" and "bad touches." After watching the video, A.W. told the counselor that the defendant, her stepfather, had been inappropriately touching her. Authorities were brought into the matter. A.W. was taken to the Children's Advocacy Center (CAC) in Covington, where she disclosed in an interview that the defendant had been sexually abusing her for several years, beginning when she was about six years old and lived with her mother and the defendant in Texas. A.W. disclosed to Jo Beth Rickels, the CAC forensic interviewer, that on many occasions the defendant touched her breasts, buttocks, and vagina, and engaged in oral sexual intercourse with her; the defendant also made A.W. put her hand on his penis on several occasions. The CAC interview was played for the jury.

The defendant testified at trial. He denied all of the allegations and stated that he never inappropriately touched A.W.

**COUNSELED ASSIGNMENT OF ERROR NUMBER ONE**

In his first counseled assignment of error, the defendant argues the trial court erred in allowing expert testimony to invade the jury's province on questions of A.W.'s veracity and reliability. The three experts who testified at trial were Julie Kringas, qualified as an expert in child sexual abuse counseling; Jo Beth Rickels, qualified as an expert in forensic interviewing of children; and Dr. Yameika Head, qualified as an expert in the field of child abuse pediatrics.

*\*2* The defendant argues that Ms. Kringas should not have talked about grooming[2] because there was no evidence of grooming; further her testimony that one of A.W.'s statements was believed over another statement was an "invasion of the jury's decision." The defendant argues that Ms. Rickels testified about the CAC process and commented on how the statements given in a CAC interview were of better quality or veracity. Finally, according to the defendant, Dr. Head, who was qualified only as an expert in forensic pediatrics, "went far

beyond testifying about her finding that no evidence of sexual assault was present and the reasons that forensic physical evidence might not have been found", she also gave psychological testimony about grooming and delayed disclosure, without a factual basis for such testimony.

Defense counsel did not request a *Daubert* hearing and no such pretrial hearing was held regarding the three experts that testified. [3] At trial, defense counsel did not object to the expertise of these three experts or to their testimony. Defense counsel's single objection was a hearsay objection during Ms. Kringas's testimony, who testified that, when she first introduced herself to Angela, A.W.'s mother, Angela "got really embarrassed and said that [A.W.]— " At this point defense counsel objected, and the trial court instructed Ms. Kringas not to repeat what Angela had said. This objection had nothing to do with expert testimony or with an expert infringing on the fact finding process.

Further at trial, defense counsel did not traverse the expert voir dire of each of the three experts but rather conceded to the prosecutor's offer of each expert's area of expertise and the trial court's qualification of the experts. After the prosecutor questioned each expert during voir dire and turned over questioning for cross-examination on the predicate, defense counsel stated either, "No questions" or "No objection." Moreover, regarding Dr. Head, defense counsel told the trial court that the doctor was a witness that he (defense counsel) wanted. When the prosecutor tendered on the predicate, defense counsel stated, "We'd have no questions. We'd accept her as an expert."

The failure to raise an objection to the admissibility and reliability of an expert's testimony constitutes a waiver of such an objection. A contemporaneous objection must be made to the disputed evidence or testimony in the trial court record to preserve the issue for appellate review. *See* LSA–C.E. art. 103(A)(1) and LSA–C.Cr.P. art. 841(A). *State v. Tillery*, 14–429 (La.App. 5 Cir. 12/16/14), 167 So.3d 15, 24, *writ denied*, 15–0106 (La.App. 1 Cir. 11/6/15). *See State v. Perry*, 08–1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, 349, *writ denied*, 09–1955 (La.6/25/10), 38 So.3d 352. *Cf. State v. Torregano*, 03–1335 (La.App. 5 Cir. 5/11/04), 875 So.2d 842, 846–47 (where the defendant never challenged the reliability or admissibility of testimony relating to the theory of delayed disclosure at trial, but objected only to whether the doctor was qualified to testify about delayed disclosure).

[3] Thus, we find that the defendant waived any objection to the trial testimony of experts Julie Kringas, Jo Beth Rickels, and Dr. Yameika Head. We decline to review this issue on appeal. This assignment of error is without merit.

## COUNSELED ASSIGNMENT OF ERROR NUMBER TWO

In related arguments, the defendant contends the verdict is contrary to the law and evidence, the verdict is not supported by sufficient evidence, and the trial court erred in refusing to grant the post-verdict judgment of acquittal.

A conviction based on insufficient evidence cannot stand as it violates Due Process. *See* U.S. Const. Amend. XIV; LSA–Const. Art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U .S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See* LSA–C.Cr.P. art. 821(B); *State v. Ordodi*, 06–0207 (La.11/29/06), 946 So.2d 654, 660; *State v. Mussall*, 523 So.2d 1305, 1308–09 (La.1988). The *Jackson* standard of review, incorporated in LSA–C.Cr.P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA–R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *See State v. Patorno*, 01–2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.

From 2006 to 2009 (the applicable time period regarding the allegations against the defendant), LSA–R.S. 14:42 provided in pertinent part:

A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

. . . .

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

From 2006 to 2009, LSA–R.S. 14:41 provided in pertinent part:

A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.

B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.

C. For purposes of the Subpart, "oral sexual intercourse" means the intentional engaging in any of the following acts with another person:

(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.

From 2006 to 2009, LSA–R.S. 14:43.3 provided in pertinent part:

A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:

*4 (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender[.]

In his brief, the defendant suggests that the evidence at trial did not prove all of the elements of aggravated rape. He contends there was no evidence of vaginal or anal intercourse. According to the defendant, based on A.W.'s testimony, her CAC interview, and what she told Dr. Head, there was also no evidence of oral sexual intercourse. The defendant suggests that A.W.'s claims show only the crime of sexual battery, oral sexual battery, or misdemeanor sexual battery. The defendant argues that A.W.'s allegations describing his actions did not constitute aggravated rape because A.W. stated the defendant licked her "butt crack" and somewhere in her "pubic area." The words "butt crack" as used by A.W. according to the defendant, is not a euphemism for anus, but rather a description of the area outside the anus.

The defendant is correct that A.W.'s trial testimony did not establish the elements of aggravated rape. The prosecutor at trial did not ask the seventeen-year-old A.W. on the stand to explain with any particularity what the defendant had done to her to establish anal, oral, or vaginal sexual intercourse. The prosecutor asked A.W. if the defendant started doing things to her that she did not like, and when it started; A.W. replied in the affirmative and that she was about six years old when it started. After this, the single exchange on direct examination regarding the defendant's sexual acts was:

Q. Once you and your mom and sister moved to Bush and joined Hector Perez, did the—did he continue to do things to you that you didn't like?

A. Yes, sir.

Q. What parts [of] your body were involved when Hector Perez would do things to you that you didn't like?

A. My breasts and my butt and my vagina.

Based on A.W.'s CAC interview, however, there was evidence of the defendant's repeated acts of oral sexual intercourse on A.W. Throughout the CAC interview, A.W. indicated the defendant licked her vagina and her "butt." Ms. Rickels placed anatomical drawings of a nude male and female in front of A.W. On the female drawing, A.W. circled the breasts, the vagina, and the buttocks to show where the defendant had put his hands, mouth, or tongue. During the interview, A.W. said the defendant had licked her "there" while tapping the vagina on the anatomical drawing; she continued, while pointing to the buttocks area on the drawing, "if he licks me here, he tries to go up my butt." Ms. Rickels asked, "He goes up your butt when he licks you there?" A.W. replied, "He tries to go up my butt crack." A.W. also told Ms. Rickels that the defendant asked her a lot if he could lick her vagina, and that almost every time he touched her, he would lick her. Later in the CAC interview, Ms. Rickels, while pointing at the drawing of the female buttocks, asked A.W. that when the defendant licked her with his tongue, it would be "like inside your butt right there?" A.W. nodded, said "mm hmm, there," then pointed again to the vagina in the drawing and said "and right here."

*5 The defendant suggests that there is no forensic or corroborative evidence that any of A.W.'s allegations actually occurred. While the defendant states that the lack of evidence is not about A.W.'s credibility, he attacks her credibility. For example, he suggests A.W. made allegations only after she became angry with him and was so nonspecific in her claims that they did not support a finding of aggravated rape. The defendant also claims that A.W.'s suggestion that some of these allegations could be corroborated by her sister or friend was inaccurate and that such corroboration did not exist. Also, the defendant alleges that the "small, cramped trailers with her mother and others always present make the opportunity to commit such a crime highly suspect." In any case, these issues raised by the defendant are matters of credibility. The jury heard all of the testimony and chose to believe A.W.'s version of the acts that occurred. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Higgins,* 03–1980 (La.4/1/05), 898 So.2d 1219, 1226, *cert. denied,* 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

The trier of fact is free to accept or reject, in whole or in part, any witness's testimony. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the witnesses' credibility, the matter is one of the weight of the evidence, not its sufficiency. *State v. Taylor,* 97–2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. *Id.* We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. *See State v. Mitchell,* 99–3342 (La.10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the accepted evidence insufficient. *State v. Quinn,* 479 So.2d 592, 596 (La.App. 1 Cir.1985).

When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis fails, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Captville,* 448 So.2d 676, 680–81 (La .1984). The jury's guilty verdict here reflected the reasonable conclusion that, based on the testimony of several witnesses, including A.W., and her CAC interview, the defendant committed aggravated rape upon A.W. for several years, mainly by way of oral sexual intercourse. In finding the defendant guilty, the jury clearly rejected the defendant's theory of innocence. *See Captville,* 448 So.2d at 680. The defendant complains of a lack of corroboration and suggests there were no witnesses to the sexual abuse, but the testimony of the victim alone is sufficient to prove the elements of the offense. *See State v. Orgeron,* 512 So.2d 467, 469 (La.App. 1 Cir.1987), *writ denied,* 519 So.2d 113 (La.1988). *See State v. Rives,* 407 So.2d 1195, 1197 (La.1981).

*6 After a thorough review of the record, we find the evidence supports the jury's unanimous verdict. We are convinced that, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the aggravated rape of A.W. *See State v. Calloway*, 07–2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). This assignment of error is without merit.

## COUNSELED ASSIGNMENT OF ERROR NUMBER THREE

In his third counseled assignment of error, the defendant argues that his sentence is excessive.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. *State v. Sepulvado*, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Andrews*, 94–0842 (La.App. 1 Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive absent a manifest abuse of discretion. *Id.* Louisiana Code of Criminal Procedure article 894.1 sets forth the factors the trial court must consider when imposing sentence. While the trial court need not recite the entire checklist of LSA–C.Cr.P. art. 894.1, the record must reflect that it adequately considered the criteria. *State v. Brown*, 02–2231 (La.App. 1 Cir. 5/9/03), 849 So.2d 566, 569.

The goal of LSA–C.Cr.P. art. 894.1 is the articulation of the factual basis for a sentence, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where the trial court has not fully complied with LSA–C.Cr.P. art. 894.1. *State v. Lanclos*, 419 So.2d 475, 478 (La.1982). The trial court should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. *See State v. Jones*, 398 So.2d 1049, 1051–52 (La.1981). On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Thomas*, 98–1144 (La.10/9/98), 719 So.2d 49, 50 (per curiam).

For the defendant's aggravated rape conviction, the trial court imposed the mandatory life sentence. The defendant argues that the trial court did not consider mitigating factors, stating "what allegedly occurred herein is not what is usually considered as aggravated rape, and certainly is not the worst kind of aggravated rape." The defendant suggests that a sentence in the fifty-year range would be more appropriate under the circumstances.

*7 In *State v. Dorthey*, 623 So.2d 1276, 1280–81 (La.1993), the Louisiana Supreme Court opined that, if a trial court finds that the punishment mandated by LSA–R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial court has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In *State v. Johnson*, 97–1906 (La.3/4/98), 709 So.2d 672, 676–77, the Louisiana Supreme Court reexamined the issue of when *Dorthey* permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law. [4] While both *Dorthey* and *Johnson* involve the mandatory minimum sentences imposed under the Habitual Offender Law, the Louisiana Supreme Court has held that the sentencing review principles discussed in *Dorthey* are not limited to the penalties provided by LSA–R.S. 15:529.1. *See State v. Fobbs*, 99–1024 (La.9/24/99), 744 So.2d 1274 (per curiam); *State v. Collins*, 09–1617 (La.App. 1 Cir. 2/12/10), 35 So.3d 1103, 1108, *writ denied*, 10–0606 (La.10/8/10), 46 So.3d 1265.

The defendant contends the trial court failed to comply with LSA–C.Cr.P. art. 894.1, because it did not consider mitigating circumstances. It is true that the trial court did not specifically discuss the case or the defendant's circumstances at sentencing. Clearly, however, the trial court judge did consider mitigating factors when he stated, "I don't see any mitigating circumstances." In any event, the trial court need not justify a sentence under LSA–C.Cr.P. art. 894.1 when it is legally required to impose that sentence. So, the failure to articulate reasons as set forth in LSA–C.Cr.P. art. 894.1 when imposing a mandatory life sentence is not an error; articulating such reasons or factors would be futile since the trial court has no discretion. *State v. Felder*, 00–2887 (La.App. 1 Cir. 9/28/01), 809 So.2d 360, 371, *writ denied*, 01–3027 (La.10/25/02), 827 So.2d 1173.

Mandatory sentences have been repeatedly upheld as constitutional and consistent with the federal and state provisions prohibiting cruel, unusual, or excessive punishment. *See State v. Jones*, 46,758, 46,759, (La.App. 2 Cir. 12/14/11), 81 So.3d 236, 249, *writ denied*, 12–0147 (La.5/4/12), 88 So.3d 462. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that, because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the offender's culpability, the gravity of the offense, and the circumstances of the case. *Johnson*, 709 So.2d at 676.

There is nothing particularly unusual about the defendant's circumstances that would justify a downward departure from the mandatory sentence under LSA–R.S. 14:42. The record before us clearly established an adequate factual basis for the sentence imposed. As a

stepfather to a very young A.W., the defendant used his status as a father figure to exploit A.W.'s trust and to rape her. *See State v. Kirsch*, 02–0993 (La.App. 1 Cir. 12/20/02), 836 So.2d 390, 395–96, *writ denied*, 03–0238 (La.9/5/03), 852 So.2d 1024. The defendant has not proven by clear and convincing evidence that he is exceptional such that a mandatory life sentence would not be meaningfully tailored to the offender's culpability, the gravity of the offense, and the circumstances of the case. *See Johnson*, 709 So.2d at 676. Accordingly, no downward departure from the presumptively constitutional mandatory life sentence is warranted. The sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive. This assignment of error is without merit.

## PRO SE ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

*8 In his first and second pro se assignments of error, the defendant argues that the trial court should have dismissed his indictment because he was denied his Sixth Amendment and statutory right to a speedy trial.

The defendant was charged with aggravated rape on August 13, 2009. Under LSA-C.Cr.P. art. 578(A)(2), no trial shall be commenced in non-capital felony cases after two years from the date of institution of the prosecution. The defendant's trial began on November 10, 2014. The defendant argues that he was tried beyond the two-year limitation of LSA-C.Cr.P. art. 578(A)(2) and that there was not one motion for continuance filed by "the defendant." He also argues there were "five" continuances filed without his consent.

The defendant's assertion that his right to a speedy trial was violated is baseless. On October 30, 2014, the defendant filed a pro se motion to quash the indictment on the grounds that the time limitations for commencement of trial had expired. A hearing on the motion was held on November 10, 2014. The prosecutor pointed out that most of the motions to continue had been at the defense's request and that other defense motions had interrupted prescription. The trial court denied the motion to quash.

Louisiana Code of Criminal Procedure article 580(A) provides:

> When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial.

Under LSA-C.Cr.P. art. 580, a preliminary plea is any pleading or motion filed by the defense that has the effect of delaying trial. These pleadings include properly filed motions to quash, motions to suppress, or motions for continuance, as well as applications for discovery and bills of particulars. Joint motions for continuance fall under the same rule. *State v. Brooks*, 02–0792 (La.2/14/03), 838 So.2d 778, 782 (per curiam). Although LSA-C.Cr.P. art. 707 provides for a motion for continuance to be in writing, where the occurrences that allegedly made the continuance necessary arose unexpectedly, and defense had no opportunity to prepare a written motion, then the trial court's denial of a defendant's motion for a continuance is properly before this Court for review. *State v. Washington*, 407 So.2d 1138, 1148 (La.1981).

The prosecution, instituted on August 13, 2009, would have prescribed on August 13, 2011, had the prescriptive period not been suspended or interrupted. *See* LSA-C-Cr.P. art. 578(A)(2). The minutes of the record indicate that on the following dates, on defense motion or joint motion, the trial court ordered the matter continued: November 13, 2009; January 22, 2010; April 19, 2010; November 8, 2010; March 16, 2011; and April 28, 2011 (written motion).

Then on June 27, 2011, the defendant's *Brady*[5] motion was to be heard, but on defense motion, the trial court ordered the motion deferred until the trial date. On September 19, October 24, and November 21, 2011, February 8, 2012, and March 22, 2012, all on defense motions, the matter was continued.

*9 After several more court-ordered continuances, the trial court again continued the matter on written defense motions on July 9, October 29, and December 12, 2012, and on January 10, 2013.

On April 9, 2013, on written defense motion, the trial court ordered the matter continued. On April 10, 2013, the trial court conducted a hearing on the defendant's various discovery motions.

On May 20, 2013, on written defense motion, the trial court ordered the matter continued. On June 12, 2013, on defense motion, the trial court ordered the matter continued. On July 15, 2013, on defense motion, the trial court ordered the matter continued. On August 19, October 3, and November 18, 2013, all based on written defense motions, the trial court ordered the matter continued.

As the above shows, there was never more than a few months between each continuance requested by the defense. So, each time the trial court ruled on defense counsel's motion for continuance, the State had either the remainder of the time limitations under LSA-C.Cr.P. art. 578(A)(2) or a *minimum* period of one year from the date of the ruling in which to commence trial, whichever time was longer. *See State v. Lathan*, 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890, 894, *writ denied*, 07–0805 (La.3/28/08), 978 So.2d 297. *See also State v. Cranmer*, 306 So.2d 698, 700–01 (La.1975); LSA-C.Cr.P. art. 580, Official Revision Comment (a).

While we note that on January 13, February 10, and May 19, 2014, the matter was continued based on written defense motions, and that on August 13, 2014, the matter was

continued based on a joint motion of the State and defense, it is unnecessary to reference any more continuances. As noted, the matter was continued on November 18, 2013. At this point, the State had at least until November 18, 2014, to commence trial. Since the defendant was tried on November 10, 2014, his trial was timely commenced. *See State v. Marshall*, 99–2864 (La.App. 1 Cir. 11/8/00), 808 So.2d 376, 379–80; *State v. Simpson*, 506 So.2d 837, 838 (La.App. 1 Cir.), *writ denied*, 512 So.2d 433 (La 1987).

The trial court properly denied the defendant's pro se motion to quash. The trial commenced well within a year of the trial court's last ruling on a defense motion. *See Simpson*, 506 So.2d at 838–39. Thus, the defendant's statutory right to a speedy trial was not violated. We further find that, given the defendant's failure to allege any prejudice, his constitutional right to a speedy trial was not violated. *See Barker v. Wingo*, 407 U.S. 514, 529–31, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972). These pro se assignments of error are without merit.

#### PRO SE ASSIGNMENT OF ERROR NUMBER THREE

In his third pro se assignment of error, the defendant argues ineffective assistance of counsel.

Because it is not precisely argued, we cannot discern the basis of defendant's argument for this assignment. The defendant first notes that his counsel filed a motion to withdraw and that the trial court refused to provide substitute counsel. According to the defendant, his right to counsel was violated. The defendant then asserts that his right to effective assistance of counsel was violated.

**\*10** The defendant, in fact, was represented by six different attorneys before the start of trial, three private counsel (conflict counsel) and three public defenders. Before private counsel, James Burke III, enrolled as the defendant's attorney, the other attorneys had filed motions to withdraw from the case. Mr. Burke, who represented the defendant at trial, filed a pretrial motion to withdraw as counsel because of irreconcilable differences. At the pretrial hearing on this issue, two weeks prior to trial, Mr. Burke told the trial court that he and the defendant had not been getting along. Mr. Burke made clear that he filed this motion at the defendant's request. When the trial court asked the defendant exactly why he wanted another attorney, the defendant stated, "I'm making a claim for the record for ineffective assistance of counsel." The defendant further stated that it was "so many stuff" he had asked Mr. Burke to do, such as the "in camera view" that he had been asking about since July 2012, and the speedy trial motion that had yet to be filed. Mr. Burke replied that he did not recall the defendant ever asking for a speedy trial motion; and the first time the defendant had asked for the OCS records had been rather recently. The trial court ruled:

> Well, conflict counsel and counsel for an indigent, you're not entitled to the attorney that you want. This case has been pending and has been pending with Mr. Burke's representation, and I don't see any reason why he is acting incompetent. I'm going to deny your motion, sir.

Louisiana Constitution Article 1, § 13 provides in pertinent part that "[a]t each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." The Sixth Amendment to the United States Constitution likewise carries such a guarantee. As a general proposition, a person accused in a criminal trial has the right to counsel of his choice. If a defendant is indigent, he has the right to court-appointed counsel. An indigent defendant does not have the right to have a particular attorney appointed to represent him. An indigent's right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute, cannot be manipulated so as to obstruct orderly procedure in courts, and cannot be used to thwart the administration of justice. The question of withdrawal of counsel largely rests with the discretion of the trial court, and its ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. *State v. Leger*, 05–0011 (La.7/10/06), 936 So.2d 108, 142; *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).

Despite the defendant's assertions about the inadequacies of his representation, the trial court found Mr. Burke to be competent. We see no reason to disturb the trial court's ruling. The defendant did not show how Mr. Burke was incompetent or how he would not be able to adequately represent him at trial. Moreover, given the multiple attorneys involved with this case at one time or another, the record suggests that, rather than demonstrating any real need requiring Mr. Burke's dismissal, the defendant manipulated his right to choose counsel to obstruct orderly procedure in the court and to thwart the administration of justice. *See Leger*, 936 So.2d at 142, 145–147. We find the trial court did not abuse its discretion by refusing to remove Mr. Burke as defense counsel due to a conflict of interest.

**\*11** Regarding the defendant's ineffectiveness argument, a claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the trial court, where a full evidentiary hearing may be conducted. But, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. *State v. Carter*, 96–0337 (La.App. 1 Cir. 11/8/96), 684 So.2d 432, 438.

In this case, the defendant merely asserted ineffective assistance of counsel, without citing any factual support in the record to support the assertion. The defendant has failed to make any allegations that could otherwise be sufficiently investigated at an evidentiary hearing in the trial court. [6] Thus, his ineffective assistance argument is baseless. *See State v. Albert*, 96–1991 (La.App. 1 Cir. 6/20/97), 697 So.2d 1355, 1363–64; *State v. Martin*, 607 So.2d 775, 788 (La.App. 1 Cir 1992). This pro se assignment of error is without merit.

## PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth pro se assignment of error, the defendant argues that the filing of criminal proceedings against him made him only the "accused," and not a "defendant."

The defendant argues that the accused is innocent until proven guilty and that the term "defendant" implies a concept completely adverse to "this basic fundamental right." The defendant appears to suggest that referring to him as "defendant" prejudiced him because the term presumes guilt. Factually and legally, the defendant was the "defendant" in this criminal trial, and he has made no showing whatever how this legal designation prejudiced him at trial. This pro se assignment is without merit.

## PRO SE ASSIGNMENTS OF ERROR NUMBERS FIVE THROUGH TWELVE

The defendant listed assignments of error numbers five through twelve but provided no law, substantive argument, or discussion for any of them. There is nothing for us to review regarding these eight pro se assignments of error. Thus, these particular issues, which have not been briefed, are considered abandoned. See Uniform Rules–Courts of Appeal, Rule 2–12.4.

## CONCLUSION

For the foregoing reasons, the defendant's conviction and sentence are affirmed.
**AFFIRMED.**

THERIOT and McCLENDON, JJ. concur.

### All Citations

Not Reported in So.3d, 2015 WL 9464512, 2015-1070 (La.App. 1 Cir. 12/23/15)

### Footnotes

1  The victim is referenced by her initials. See LSA–R.S. 46:1844(W).

2  Ms. Kringas testified that "grooming" is "when a perpetrator manipulates his behavior to engage a child to gain their (sic) trust for the purpose of eventually abusing them."

3  See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

4  The defendant does not mention Dorthey or Johnson in his brief. He does, however, address both of these cases in his written motion to reconsider sentence. Also, in his brief, the defendant argues the life sentence imposed is excessive "for this offense and this offender." Thus, we address the Johnson downward departure issue.

5  Brady v. Maryland, 373 U.S. 83, 83, S.Ct. 1194, 10 L.Ed. 215 (1963).

6  The defendant would have to satisfy the requirements of LSA–C.Cr.P. art. 924, et seq., in order to receive such a hearing.

**End of Document**   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

**eFile-ProSe**

| | |
|---|---|
| **From:** | Angola E-Filing <LSP_prisonerefiling@doc.la.gov> |
| **Sent:** | Thursday, September 3, 2020 12:15 PM |
| **To:** | eFile-ProSe |
| **Subject:** | Angola E-Filing |
| **Attachments:** | DOC # 632518121315.pdf |