## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HECTOR PEREZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2429** |
| **DARREL VANNOY, ET AL.** | **SECTION "A"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual Background

The petitioner, Hector Perez ("Perez"), is a convicted inmate incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana. On August 13, 2009, Perez was charged in St. Tammany with one count of aggravated rape violation of La. Rev. Stat. § 14:81.2.[2] Perez entered a plea of not guilty in the case.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the 14:64.3claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]St. Rec. Vol. 1 of 10, Bill of Indictment, 8/13/09. Perez's wife, Angela Perez, was charged in the same Bill of Indictment with accessory after the fact by aiding and abetting Perez, knowing or having reasonable grounds to believe that he had committed aggravated rape. *Id.* At the time of Hector Perez's trial, Angela Perez was a fugitive. *See* St. Rec. Vol. 3 of 10, Trial Transcript, p. 659, 11/11/14.

[3]St. Rec. Vol. 1 of 10, Minute Entry, 8/20/19.

The record reflects that,[4] in 2002, Perez and Angela Perez were involved in a romantic relationship. At that time, they were living in Texas and Angela Perez had a five-year-old daughter, A.W.,[5] the victim in this case, from a previous relationship. In 2003, Angela Perez and Hector Perez married after having a daughter together. Perez, who was a roofer, left for Florida and then to Louisiana to find work. Gerald Spell and Hector Perez began doing roofing work together in Louisiana in 2005. In approximately 2006, Angela Perez and her daughters went to live with Hector Perez in Bush, Louisiana. Originally, the family lived in a camper owned by Spell. Eventually, the family moved into a trailer on Home Lane in Bush. Later, the family moved back to a trailer on Spell's property.

In 2009, when A.W. was in the fifth grade at Fifth Ward Junior High School, Jackie Nettles, a school counselor showed her class a video on "good touches" and "bad touches." After watching the video, A.W. told Nettles that Hector Perez, her stepfather, had been inappropriately touching her. Authorities were brought into the matter. A.W. was interviewed by Jo Beth Rickels, a forensic interviewer, at the Children's Advocacy Center (CAC) at the Covington Hope House. During her interview, A.W. disclosed that Hector Perez started sexually abusing her when she was about six years old and lived with her mother and Perez in Texas. A.W. disclosed to Rickels that on many occasions Perez touched her breasts, buttocks, and vagina, and engaged in oral sexual intercourse with her. According to A.W., Perez also made A.W. put her hand on his penis on several occasions. The CAC interview was played for the jury.

---

[4]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Perez*, No. 2015 KA 1070, 2015 WL 9464512, at 1 (La. 1st Cir. Dec. 23, 2015); St. Rec. Vol. 8 of 10, 1st Cir. Opinion, 2015 KA 1070, pp. 2-3, 12/23/15.

[5]In accordance with La. Rev. Stat. Ann. § 46:1844(W), initials are used for minors and sex offense victims. This Court will do the same.

A.W. testified that she was about six years old when Perez started doing things she did not like to her breasts, "butt," and vagina. Eventually, she told her mother, but after meeting with Hector Perez and A.W., Angela Perez told A.W. that she did not believe her. The abuse continued until A.W. reported the abuse to Nettles. A.W. recalled being interviewed by a detective and a woman from the Office of Community Service. A.W. stated that she told the truth to Rickles when she was interviewed at the Covington Hope House. A.W. explained that, after she reported the abuse, her mother treated her horribly and that A.W. considered cutting herself. A.W. told this information to her grandmother, a teacher at school and her therapist, Julie Kringas. Eventually, A.W. and her sister were removed from Angela Perez's care and placed in foster care. They were later adopted.

Julie Kringas, a counselor for the Offices of Community Services, provided counseling services to A.W. for several years starting on March 9, 2009. Just prior to the first counseling session, Kringas witnessed Angela Perez whispering into A.W.'s ear and noticed that A.W. appeared agitated. During her first private session with A.W., A.W. disclosed the sexual abuse Hector Perez had committed against her. After Kringas told A.W. there would be an investigation, A.W. became upset and said in a rehearsed manner that she had made up the allegations because Hector Perez would not allow her to wear makeup. When Kringas further questioned her, A.W. cried and said she did not want to split her family up but admitted that the sexual abuse had in fact happened. Over the following years of counseling, A.W. never recanted again.

Hector Perez testified on his own behalf at trial. He denied all of the allegations and stated that he never inappropriately touched A.W. He claimed A.W. had falsified the accusations because of his strict parenting. Perez admitted that he saw the police coming down the road as he was leaving his house to go to the store to buy laundry detergent. He claimed he did not know that the

police were looking for him at that time, but rather testified that the police asked for his wife. He testified that, after he left, his wife called and told him if he returned the girls would be taken away from them. Perez claimed he called Family Services and left a message but did not receive a call in return. He further claimed that he did not turn himself into the police because he needed to make arrangements for the care of his family in his absence.

Perez was tried by a jury on November 10 through 14, 2014, and was found guilty as charged.[6] On December 19, 2014, the Trial Court denied Perez's motions for new trial and post verdict judgment of acquittal.[7] On that same day, the Trial Court sentenced Perez to life imprisonment without the benefit of probation, parole, or suspension of sentence.[8] The Trial Court denied Perez's motion to reconsider sentence.[9]

Attorney Sherry Watters was assigned as counsel for purposes of appeal.[10] On direct appeal, Perez's appellate counsel filed a brief raising the following claims for relief: (1) the Trial Court erred in allowing the experts' testimony to invade the province of the jury on questions of A.W.'s veracity and reliability; (2) the State failed to prove the charge beyond a reasonable doubt; and (3) the mandatory sentence imposed was excessive, cruel, and unusual punishment.[11] Perez

---

[6]St. Rec. Vol. 1 of 10, Trial Minutes, 11/10/14; Trial Minutes, 11/11/14; Trial Minutes, 11/12/14; Trial Minutes, 11/13/14; Trial Minutes, 11/14/14; Verdict, 11/14/14; St. Rec. Vol. 2 of 10, Trial Transcript, 11/10/14; St Rec. Vol. 3 of 10, Trial Transcript (con't), 11/10/14; Trial Transcript, 11/11/14; Trial Transcript, 11/12/14; St. Rec. Vol. 4 of 10, Trial Transcript (con't), 11/12/14; Trial Transcript, 11/13/14; St. Rec. Vol. 5 of 10, Trial Transcript (con't), 11/13/14; Trial Transcript, 11/14/14.

[7]St. Rec. Vol. 1 of 10, Sentencing Minutes, 12/19/14; St. Rec. Vol. 2 of 108, Motion for New Trial Pursuant to LA.C.Cr.P. Art. 851(1), (2), (4), & (5) and Motion for Post Judgment of Acquittal Pursuant to La.C.Cr.P. 821 B & C, 12/19/14; St. Rec. Vol. 5 of 10, Sentencing Transcript, 12/19/14.

[8]St. Rec. Vol. 1 of 10, Sentencing Minutes, 12/19/14; St. Rec. Vol. 5 of 10, Sentencing Transcript, 12/19/14.

[9]St. Rec. Vol. 1 of 10, Sentencing Minutes, 12/19/14; St. Rec. Vol. 2 of 10, Motion to Reconsider Sentence, 12/19/14; St. Rec. Vol. 5 of 10, Sentencing Transcript, 12/19/14.

[10]St. Rec. Vol. 2 of 10, Louisiana Appellate Project Letter, 2/2/15.

[11]St. Rec. Vol. 6 of 10, Appellate Brief, 2015-KA-1070, 8/26/15.

filed a pro se brief raising the following claims for relief: (1) the State violated his right to a speedy trial and did not try him within the statutory limits provided by La. Code Crim. P. art. 578; (2) the Trial Court erred in denying Perez's motions to quash and dismiss the indictment and motion in arrest of judgment; (3) the Trial Court erred when it denied defense counsel's motion to withdraw and declined to appoint another attorney; (4) the Trial Court erred in denying the defense's motion to restrict the prosecution from using prejudicial terminology at trial and by allowing the prosecution to call Perez the "defendant" and A.W. the "victim"; (5) the Trial Court erred in allowing an all-white jury; (6) the Trial Court erred when it denied defense's motion in limine related to battery on his wife; (7) the Trial Court erred in denying the defense's motion to allow the jury to visit the crime scene; (8) the Trial Court erred in overruling the defense's objection and denying its motion for a mistrial when the jury coordinator entered the jury room during recess; (9) the Trial Court erred in failing to remove two jurors when they both stated they knew parties on the prosecution's side; (10) the Trial Court erred in denying defense's motion in limine pertaining to the jailhouse phone calls; (11) prosecutorial misconduct occurred when the prosecutor cried during the examination of A.W.; and (12) the Trial Court erred in denying the defense's motion for mistrial based on an improper statement by the prosecution.[12]

On December 23, 2015, the Louisiana First Circuit affirmed the conviction and sentence finding Perez's counsel claims and pro se claims one through four lacked merit and his pro se claims five through twelve were not briefed and were considered abandoned under Uniform Rules

---

[12]St. Rec. Vol. 6 of 10, Supplemental Pro Se Brief, 2015-KA-1070, 10/29/15.

– Courts of Appeal Rule 2-12.4.[13]  On February 3, 2017, the Louisiana Supreme Court issued a denial without stated reasons of the related writ application.[14]

On March 22, 2018, Perez filed a pro se application for post-conviction relief asserting the following claims for relief: (1) ineffective assistance of counsel in failing to ask for a mistrial or disqualify a tainted panel of jurors; (2) ineffective assistance of counsel in failing to object to prejudicial use of inadmissible Child Sexual Abuse Accommodation Syndrome evidence at trial; (3) ineffective assistance of counsel in failing to object and ask for directed verdict when the victim failed to testify to all the elements of the crime; (4) ineffective assistance of counsel in failing to raise issue of impeached testimony, standing alone, being unconstitutionally used to obtain conviction; (5) ineffective assistance of counsel in failing to object to State's use of out-of-court testimonial statements of the alleged victim's mother in violation of *Crawford v. Washington*;[15] (6) ineffective assistance of appellate counsel in failing to raise issues on appeal related to objections on the record to prosecutorial misconduct.[16]

On April 16, 2018, the Trial Court found that claims one through five were not grounds under La Code Crim. P. art. 924, and that claim six was not listed in La. Code Crim P. art. 930.3

---

[13]*State v Perez,* No. 2015 KA 1070, 2015 WL 9464512, at *1-11 (La. App. 1st Cir. Dec. 23, 2015); St. Rec. Vol. 8 of 10, 1st Cir. Opinion, 2015 KA 1070, 12/23/15.

[14]*State v. Perez,* 215 So. 3d 184 So.3d 695 (La. 2017); St. Rec. Vol. 7 of 10, La. S. Ct. Order, 2016-KO-0176, 2/3/17; La. S. Ct. Writ Application, 16 KO 176, 1/19/16.

[15]In *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."

[16]St. Rec. Vol. 8 of 10, Initial Application for Post-Conviction Relief, 3/19/18.

and denied the application for post-conviction relief.[17]   On July 23, 2018, the Louisiana First

Circuit granted Perez's related writ application, vacated the judgment of the Trial Court, and

remanded the matter for consideration of the merits of the claims.[18]

On June 14, 2019, the Trial Court denied the application on the merits.[19]   The Louisiana

First Circuit denied Perez's related writ without reasons.[20]   The Louisiana Supreme Court denied

Perez's related writ application finding he failed to show he received ineffective assistance of

counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).[21]

## II.    Federal Habeas Petition

On September 2, 2020, Perez filed his original petition for federal habeas corpus.[22]   Perez

raised the following claims for relief: (1) ineffective assistance of counsel for failing to move for

a mistrial or to disqualify the jury panel when extrinsic evidence tainted the jury pool; (2)

ineffective assistance of counsel for failing to object to the prejudicial use of inadmissible Child

Sexual Abuse Accommodation Syndrome evidence at trial; (3) ineffective assistance of counsel

for failing to object and request a directed verdict when the alleged victim failed to testify to all

elements of the crime charged; (4) ineffective assistance of counsel for failing to raise the issue of

impeached testimony, standing alone, being unconstitutionally used to obtain the conviction; (5)

---

[17]St Rec. Vol. 8 of 10, Reasons for Judgment, 4/16/18.

[18] *State v. Perez*, No. 2018 KW 0597, 2018 WL 3533494 (La. App. 1st Jul. 23, 2018); St. Rec. Vol. 9 of 10, 1st Cir. Order, 2018 KW 0597, 7/23/18; 1st Cir. Writ Application, 2018 KW 0597, 5/3/18.

[19]St. Rec. Vol. 8 of 10, Denial of Application for Post-Conviction Relief and Reasons for Judgment, 6/14/19.

[20]*State v. Perez*, No. 2019 KW 0946, 2019 WL 4751564 (La. App. 1st Cir. Sept. 30, 2019); St. Rec. Vol. 9 of 10, 1st Cir. Order, No. 2019 KW 0946, 9/30/19; 1st Cir. Writ Application, 2019 KW 0946, 7/15/19.

[21]*State v. Perez*, 300 So. 3d 846 (La. 2020); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 19-KH-1958, 8/14/20; La. S. Ct. Writ Application, 19 KH 1958, 10/28/19.

[22]Rec. Doc. No. 1.

ineffective assistance of counsel for failing to object to the State's use of out of court testimonial statements of Angela Perez in violation of *Crawford v. Washington*; (6) ineffective assistance of appellate counsel for failing to raise issues on appeal related to objections on the record to prosecutorial misconduct.[23]

The State filed a response admitting that Perez's petition is timely, and his claims are exhausted.[24]  It asserts that Perez's claims are meritless.  Perez filed a traverse reiterating his claims.[25]

## III.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[26] applies to this petition, which was filed in this Court on September 2, 2020. The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Perez's petition was timely filed, and his claims exhausted.

---

[23]Rec. Doc. No. 20.

[24]Rec. Doc. No. 11.

[25] Rec. Doc. No. 15.

[26]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

**IV.**    <u>**Standards for a Merits Review**</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's

decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions

of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must

give deference to the state court findings unless they were based on an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2)

(2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies

the "presumption of correctness" that attaches to state court findings of fact and the "clear and

convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.

28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are

reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference

be given to the state court's decision unless the decision is "contrary to or involves an unreasonable

application of clearly established federal law" as determined by the United States Supreme Court.

*Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is

that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so

obvious that a clearly established rule applies to a given set of facts that there could be no

'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-

07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must

extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not

'clearly established at the time of the state-court decision.'"  *White*, 134 S. Ct. at 1706 (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a

conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state

court decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*,

210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law

if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134

S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context

of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.

The Court, however, noted that an unreasonable application of federal law is different from an

incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the state-court decision applied [a

Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford

v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699

(2002)).

Thus, under the "unreasonable application" determination, the Court need not determine

whether the state court's reasoning is sound, rather "the only question for a federal habeas court is

whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d

230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the

precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record before the state court that

adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Ineffective Assistance of Counsel (Claim Nos. 1-5)

Perez claims he was denied effective assistance of counsel.  He specifically claims his

counsel was ineffective in failing to move for a mistrial or to disqualify a panel of jurors who were

tainted by extrinsic facts and evidence.  He further claims that his counsel was ineffective in failing

to object to the use of Child Sexual Abuse Accommodation Syndrome evidence at trial.  Perez also

claims that his counsel was ineffective in failing to move for a directed verdict.  He additionally

claims that his counsel failed to object to impeached testimony as insufficient to sustain his

conviction.  Finally, he claims his counsel was ineffective to object to the victim's mother's out-

of-court testimony in violation of *Crawford*.

The State responds that Perez fails to show deficient performance or resulting prejudice.

With regard to claim relating to the jury panel, the State asserts that counsel had no basis to move

to strike the jury panel as a prospective juror, Schuster, made no comments that were so prejudicial

as would warrant striking an entire panel.  As for his claim relating to the prosecution's expert, Dr.

Head, the State argues the Trial Court reasonably determined that Head was properly qualified as

an expert in the field of child abuse and that her testimony fell within the limits of permissible

expert testimony as a matter of Louisiana law.  The State argues that a motion for directed verdict

was not authorized by law and that Perez fails to show prejudice as his counsel filed a motion for

post-verdict judgment of acquittal, which was denied.   The State claims Perez's argument

regarding the failure to argue that impeached testimony, standing alone, is insufficient to obtain a

conviction is meritless. Finally, the State claims that defense counsel objected to testimony regarding Angela Perez's statements and the objection was overruled as the prosecution did not offer the statements for the truth of the matter asserted.

Perez raised these claims in his application for post conviction relief. The Trial Court found that Perez failed to meet the standard in *Strickland v. Washington*, 466 U.S. 668 (1984).[27] The Louisiana Supreme Court found Perez failed to show he received ineffective assistance of counsel under *Strickland*.[28]

### A.    Standards of Review under *Strickland*

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). In *Strickland v. Washington, 466 U.S. 668 (1984)*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (1995).

---

[27]St. Rec. Vol. 8 of 10, Denial of Application for Post-Conviction Relief and Reasons for Judgment, pp. 3-4, 6/14/19.

[28]*Perez*, 300 So. 3d at 846; St. Rec. Vol. 10 of 10, La. S. Ct, Order, 19-KH-1958, 8/14.20.

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v.*

*Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at 112.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690.  This Court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore*, 194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v.*

*Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000).   Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

### B.   <u>Failure to Request a Mistrial or to Disqualify Tainted Jury Pool</u>

Perez contends that his counsel was ineffective in failing to ask for a mistrial or to disqualify the jury venire that included Kristina Schuster, a victim of rape who was a nurse in sexual trauma and worked as a court-appointed special advocate. Perez admits that his counsel objected to statements made by Schuster during voir dire but contends that the Trial Court did not admonish the jury venire.   He further contends that Schuster's comments during voir dire constituted "outside influences other than the evidence introduced during trial" which "prejudicially influenced the jury to arrive with their verdict of guilty."[29]  He concludes that his counsel failed to challenge the entire venire and allowed Perez to go to trial with a tainted jury.[30]

The States argues that defense counsel unsuccessfully sought to remove Schuster for cause and thereafter removed her by using a peremptory challenge.  The State continues that none of the comments by Schuster were so prejudicial as would warrant striking an entire jury panel, and that Perez fails to show that defense counsel was ineffective.

Perez raised this claim in his application for post-conviction relief.  In denying the claim, the Trial Court found that Schuster's answers did not suggest that she was inclined to believe the victim over Perez.[31]  The Trial Court specifically noted that Schuster stated that her son was falsely

---

[29]Rec. Doc. 1, p. 28.

[30]*Id*., at pp. 7-8

[31]St. Rec. Vol. 8 of 10, Denial of Application of Post-Conviction Relief and Reasons for Judgment, p. 2, 6/14/19.

accused once and that, while Perez had been accused, she would see how the trial played out because there had been cases where people had been falsely imprisoned.[32]

The Trial Court also compared this case to cases with claims that a jury panel had been tainted.[33]  The Trial Court found that Schuster's answers were nothing like the kind of comments that warranted striking an entire panel of prospective jurors.[34]  It explained that Schuster's comments that:

> "(i) she could think of reasons why a child might be reluctant to disclose sexual abuse that did not imply untruthfulness on the part of the child; (ii) she could think of reasons why a child might have 'some internal conflict' about disclosing sexual abuse; (iii) she was familiar with the concept of 'grooming' but did not elaborate on it; and (iv) because of her personal experience ('our child was abused at age five') she understood why a child might give different statements to different persons at different times – 'All of us remember things differently and memories are never exact'"

did not imply Perez's guilt or that he was a criminal because he had been to jail before, nor did they tend to boost the credibility of any particular State witness.[35]

The Trial Court continued that even if the comments implied something, they did not warrant striking an entire jury panel as the jurors chosen swore to accept the law as given by the Court.[36]  The Trial Court concluded that there was no reasonable probability that a motion for mistrial or a motion to strike the panel of prospective jurors would have been granted, and that counsel was not ineffective in failing to make a meritless motion.[37]

---

[32]*Id.*

[33]*Id.*, at pp. 3-4.

[34]*Id.*, at p. 4.

[35]*Id.*

[36]*Id.*

[37]*Id.*

The Louisiana Supreme Court found Perez failed to show he received ineffective assistance of counsel under *Strickland*.[38]

While the entire venire was initially present, the Trial Court, after calling the first 24 prospective jurors, told the remaining prospective jurors that they would not be wasting their time if they remained in the courtroom during the voir dire of the first panel, but could step out if they were uncomfortable.[39]  The record does not reflect if any of the prospective jurors on the second panel remained in the courtroom during the voir dire of the first panel.  Kristina Schuster, who was on the first panel, stated that she was a retired nurse.[40]  Schuster explained that she was a court-appointed special advocate for children no older than five years old and had made numerous appearances in court.[41]  She, however, stated that her work would not affect her ability to be fair in the case.[42]

At a sidebar, Schuster explained that she had been the victim of a rape as a teen but could be fair.[43]  When defense counsel raised his concern that Schuster might identify more with the victim rather than starting with a clean slate, Schuster stated she disagreed with him and was able to sit through ideas, propositions, theories and presume innocence and could "absolutely" be fair.[44]

When the prosecutor posed a question to the entire panel regarding whether and when a child would disclose sexual abuse and gave each panel member an opportunity to respond,

---

[38]*Perez*, 300 So. 3d at 846; St. Rec. Vol. 10 of 10, La. S. Ct, Order, 19-KH-1958, 8/14.20.

[39]St. Rec. Vol. 2 of 10, Trial Transcript, pp. 335-36, 11/10/14.

[40]*Id.*, at p. 347.

[41]*Id.*, at pp. 382-83.

[42]*Id.*, at p. 383.

[43]*Id.*, at pp. 394-95.

[44]*Id.*, at pp. 396-97.

Schuster responded that she thought that, most frequently, a child would tell about sexual abuse

while still a child, but not immediately, or would disclose the information as an adult.[45]  Five other

members of the panel gave the same answer.[46]   The remaining panel members gave different

answers.[47]   When the prosecutor asked if anyone had in his or her mind a reason for delayed

disclosure of the abuse, Schuster replied, "[c]oercion.  It might be the parent or maybe somebody

who they desperately need or makes threats to the parents."[48]  She explained that threats could be

spoken or implied.[49]  She agreed that there could be some internal conflict within the victim and

gave the example of parent/child, uncle or brother.[50]   She also responded that perpetrators

sometimes "groom" children to build a level of trust.[51]   *Everyone* in the panel responded

affirmatively that they were familiar with grooming.[52]   The prosecution posed the question if

anyone disagreed that if a victim discussed the abuse with more than one person where the accounts

were not one hundred percent accurate, it did not mean the victim was making falsifying the

accusations.[53]   When specifically called upon to answer the question, Schuster replied:

> I would assume the child – our child was abused at age five.  He spoke to
> someone at age six, maybe at age seven.  The child developed memory, the mind,
> the understanding, the dynamics will change.  All of us remember things differently

---

[45]*Id.*, at pp. 403-06.

[46]*Id.,* at pp. 406-07.

[47]*Id.*, at 405-08.  When the prosecution asked the same question of the second panel, a majority of the panel answered differently than Schuster.  St. Rec. Vol. 3 of 10, Trial Transcript (con't), pp. 579-83, 11/10/14.

[48]St. Rec. Vol. 2 of 10, Trial Transcript, pp. 409-10, 11/10/14.

[49]*Id.*, at p. 410.

[50]*Id.*

[51]*Id.*, at pp. 410-11.

[52]*Id.*, at p. 411.

[53]*Id.*, at p. 413.

and memories are not exact ever, so you couldn't take that. You have to have a summary of evidence to make a decision.[54]

Schuster and another prospective juror, Mrs. Kelley, both voiced their opinions that the personality of the interviewer could have an influence and that questions could be posed in certain ways.[55]

As the prosecution was questioning Kelley, defense counsel was granted permission to approach the bench and stated his opinion that the prosecution was coming close to trying to get jurors to commit, to educate them, and was trying the case in voir dire.[56] The Trial Court agreed that the prosecution was "getting pretty far along," and noted that the "trauma nurse" was "almost testifying."[57] The prosecution moved on and asked the panel if it had an opinion as to what portion of children who alleged to be sexually abused were telling the truth, and nearly every prospective juror, including those who answered before and after Schuster, opined that most children were telling the truth.[58]

Defense counsel questioned each prospective juror about his/her initial thoughts when advised that Perez was charged with aggravated rape.[59] Some of the responses from members of the first panel included "sad," "angry," "sick," "terrible," "tragic if true," "concerned," and "shock and awe."[60] Schuster said her initial feelings about the case was "we will see because rape is disbelief [sic] because rape's [sic] a serious crime, but lately there has [sic] been several cases

---

[54]*Id.*, at p. 414.

[55]*Id.*

[56]*Id.*, at pp. 414-15.

[57]*Id.*, at p. 416.

[58]*Id.*, at pp. 421-23.

[59]*Id.*, at pp. 476-87.

[60]*Id.*, at pp. 477-86.

where people have been falsely imprisoned and I think the affect of that life – the affect of the life of the falsely accused is equally grievous so we will see if the attitude depends on the evidence."[61] Finally, Schuster responded that sometimes innocent people are convicted due to false accusations.[62]  She again stated she was sure she could be impartial.[63]

The Trial Court denied defense counsel's challenge of Schuster for cause.[64]  Defense counsel used a peremptory challenge to strike Schuster.[65]  Defense counsel successfully challenged three other prospective jurors for cause and peremptorily challenged eight prospective jurors from the first panel, including Schuster.[66]  Eight people were selected as jurors from the first panel, were sworn, and were given instructions, including that the evidence would come from the witness stand.[67]  Defense counsel successfully challenged for cause three prospective jurors from the second panel and utilized four peremptory challenges.[68]  After jurors were selected from the second panel, they were sworn and similarly instructed.[69]  The entire jury was sworn together the following day before the reading of the bill of indictment.[70]

---

[61]*Id.*, at p. 481.

[62]St. Rec. Vol. 3 of 10, Trial Transcript (con't), p. 511, 11/10/14.

[63]*Id.*, at p. 517.

[64]*Id.*, at. p. 524.

[65]*Id.*, at. p. 528.

[66]*Id.*, at pp. 523-28.

[67]*Id.*, at pp. 528-31.

[68]*Id.*, at p. 649-52.

[69]*Id.*, at pp. 653-55.

[70]St. Rec. Vol. 3 of 10, Trial Transcript, p. 660, 11/11/14.

The Sixth Amendment and Fourteenth Amendments provide a defendant with the right to a fair trial, which includes the right to an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 727 (1992); *Ross v. Oklahoma*, 487 U.S. 81 (1988); *Miniel v. Cockrell*, 339 F.3d 331, 338 (5th Cir. 2003). Jurors need not be totally ignorant of the facts and issues involved in the case to be impartial. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 723. Thus, in selecting a jury, "[t]he standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). To demonstrate actual bias, "admission or factual proof" of bias must be presented. *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001).

La. Code Crim. P. art. 419(a) provides that "[a] general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." Remarks from the venire may constitute prejudicial conduct. *State v. Hall*, 986 So. 2d 863, 870-71 (La. App. 2d Cir. 2008) (citation omitted). Pursuant to La. Code Crim. P. art. 775, a mistrial must be granted, on motion of the defense, when "prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]" A mistrial, however, is a drastic remedy warranted "only when the defendant has received substantial prejudice such that he cannot receive a fair trial. *Hall*, 986

So.2d at 871.  Absent a showing that a prospective juror's comments affected other jurors and prejudiced the defendant, a mistrial is not warranted.  *Id.*  (citation omitted).  Whether or not to strike an entire panel is committed to the discretion of the trial court.  *Id.*  (citations omitted).  "The defendant bears the burden of proving the grounds for setting aside the venire."  *State v. Kitts*, 250 So. 3d 939, 960 (La. App. 1st 2018).

Perez has failed to demonstrate that his counsel was ineffective for failing to move to strike the entire venire or request a mistrial or any resulting prejudice.  At no time did Schuster express any bias against Perez.  She continually stated that she could be fair and impartial and would have to hear all the evidence before coming to a decision.  Despite her assurances, defense counsel exercised a peremptory challenge against her.  Second, a thorough examination of the voir dire reveals that the prospective jurors were repeatedly informed by counsel about the presumption of Perez's innocence and the State's burden to prove his guilt reasonable doubt to sustain a conviction.[71]  Throughout voir dire, the prospective jurors were questioned by both the prosecution and the defense concerning possible biases and preconceptions.  Every prospective juror who expressed bias or preconceptions was removed.[72]

Before opening statements, when the Trial Court read the opening instructions, it reminded the jurors that the burden was always on the State to prove every element beyond a reasonable doubt.[73]  The Trial Court again advised the jurors of Perez's presumption of innocence and that he was not required to prove his innocence.[74]  The Trial Court advised the jurors to consider only the

---

[71]St. Rec. Vol. 2 of 10, Trial Transcript, pp. 452-57, 11/10/14; St. Rec. Vol. 3 of 10, Trial Transcript, pp. 505-519, 604-08, 612-13, 623, 633-634, 11/10/14.

[72]St. Rec. Vol. 3 of 10, Trial Transcript, pp. 523-24, 649, 11/10/14.

[73]St. Rec. Vol. 3 of 10, Trial Transcript, pp. 664, 666, 11/12/14.

[74]*Id.*, at pp. 665-66.

testimony of witnesses and exhibits entered into evidence and to not to be influenced by sympathy passion, prejudice, or public opinion.[75]  In its final instructions to the jury, the Trial Court reiterated those instructions regarding the presumption of innocence, the State's burden to prove guilt beyond a reasonable doubt, the determination of facts only from the evidence presented through witnesses and exhibits permitted by the Court.[76]

There is simply nothing in the record to indicate that the selected jurors were tainted by the comments made by Schuster during voir dire, or that Perez was tried by a partial jury.  Those persons selected as jurors expressed that they would be fair and impartial and would not convict Perez unless the State proved Perez's guilt beyond a reasonable doubt.  Thus, there was no basis for counsel to move to strike the entire venire or move for a mistrial nor has Perez established that there is a reasonable probability that such a motion would have been successful.  *See State v. Baker*, 528 So. 2d 776, 779 (La. App. 3d Cir. 1988) (trial court did not abuse its discretion in failing to strike entire panel after a prospective juror expressed a preconceived opinion as to the defendant's guilt where the panel members "affirmatively acknowledged that they possessed no opinion of guilt, comprehended the burden of proof and would consider Baker innocent until proven guilty,"); *State v. Young*, 469 So. 2d 1014, 1019-20 (La. App. 1st Cir. 1985) (no error in failing to summon a new jury venire or grant a mistrial based on comments by several prospective jurors regarding defendant's guilt where those prospective jurors who may have been influenced by the comments were excused).

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*.  Perez is not entitled to relief on this claim.

---

[75]*Id.*, at pp. 666-67, 669.

[76]St. Rec. Vol. 5 of 10, Trial Transcript, pp. 1088-89, 11/14/14.

### C.      Failure to Object to Dr. Head's Testimony

Perez claims his counsel was ineffective in failing to object the Trial Court qualifying Dr. Yameika Head as an expert in the field of child abuse pediatrics and general pediatrics.  He further claims his counsel was ineffective in failing to object to Dr. Head's testimony regarding Child Sexual Abuse Accommodation Syndrome and failed to request a *Daubert*[77] hearing on the issue and should have also objected to her testimony about "delayed disclosure."  He also claims Dr. Head's testimony bolstered the victim's testimony in violation of *State v. Foret,* 628 So. 2d 116, 1123 (La. 1993).[78]  The State responds that Dr. Head was properly qualified as an expert and her testimony fell within the limits allowed under Louisiana law.

The Trial Court, in denying the claim on post conviction review, found that Dr. Head had been certified as a specialist in Child Abuse Pediatrics since 2005.[79]  It further found that Dr. Head did not provide any testimony regarding Child Sexual Abuse Accommodation Syndrome, she did not explain the concept of delayed reporting in general terms, and explained that victims of sexual abuse often do not show physical signs of trauma.[80]  It concluded that Perez's claims that counsel failed to object to prejudicial use of inadmissible Child Sexual Abuse Accommodation Syndrome

---

[77]In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–95 (1993), the United States Supreme Court set a new standard to assist federal district courts in evaluating the admissibility of expert testimony.  The new standard required the district courts to perform a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.  The Court notes, however, that "*Daubert* is an exegesis of Rule 702 of the Federal Rules of Civil Procedure and governs the admission of expert evidence in federal trials only.  *Daubert* does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution."  *Kinder v. Bowersox*, 272 F.3d 532, 545 n. 9 (8th Cir. 2001).

[78]The Louisiana Supreme Court adopted the guidelines set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* for determining the reliability of expert scientific testimony.  509 U.S. 579, 592–95 (1993); *State v. Foret*, 628 So.2d 1116, 1121–23 (La. 1993) (establishing "requirement that expert scientific testimony must rise to a threshold level of reliability in order to be admissible under La.C.E. art. 702.").

[79]St. Rec. Vol. 8 of 10, Denial of Application for Post-Conviction Relief and Reasons for Judgment, p. 5, 6/14/19.

[80]*Id.,* at pp. 5-6.

evidence at trial or call for a *Daubert* hearing were without merit as no such evidence was presented at trial.[81]   The Trial Court further held that Perez's claim that Dr. Head lacked the necessary credentialing to testify lacked factual support, and that her testimony regarding delayed disclosure and the inferences that can be validly drawn from the lack of physical injury were well within the limits of permissible expert testimony.[82]   As previously noted, the Louisiana Supreme Court found Perez failed to show he received ineffective assistance of counsel under *Strickland*.[83]

Dr. Head testified regarding her education, her specialization in pediatrics, and her background in examining child victims of abuse.[84]   She estimated that she had examined thousands of children related to situations of possible abuse.[85]   Dr. Head testified that she had been qualified as an expert in child abuse pediatrics and general pediatrics quite a few times and had never been denied expert status.[86]   Defense counsel accepted her as an expert, and the Trial Court qualified Dr. Head as an expert in the fields of child abuse pediatrics and general pediatrics.[87]

Dr. Head has, in fact, been qualified as an expert in the fields of child abuse pediatrics and general pediatrics in many cases.   *Mosley v. Vannoy*, Civ. Action No. 16-13619, 2017 WL 3614455, at *4 (E.D. La. Jul. 11, 2017) (noting Dr. Head was qualified by joint stipulation as an expert in the field of child abuse pediatrics), *adopted*, 2017 WL 3614300 (E.D. La. Aug. 22, 2107), *appeal filed*, 17-30718 (5th Cir. Sep. 1, 2017); *State v. Cumberland*, No. 2013 KA 1847, 2014 WL

---

[81]*Id.*, at pp. 6-7.

[82]*Id.*, at p. 7.

[83]*Perez*, 300 So. 3d at 846; St. Rec. Vol. 10 of 10, La. S. Ct, Order, 19-KH-1958, 8/14.20.

[84]St. Rec. Vol. 8 of 10, Trial Transcript (con't), pp. 782-783, 11/12/14.

[85]*Id.*, at p. 783.

[86]*Id.*, at p. 784.

[87]*Id.*, at p. 785.

3843854, at *4 (La. App. 1st Cir. Jun. 25, 2014) (victim was interviewed by Dr. Head, an expert

in forensic pediatrics); *State v. Johnson*, No. 2013 KA 0372, 2013 WL 6858334, at *2 (La. App.

1st Cir. Dec. 27, 2013) ("Dr. Yameika Head was accepted by the trial court as an expert in forensic

pediatrics."); *State v. Breaux*, No. 2011 KA 0015, 2011 WL 6141636, at *2 (La. App. 1st Cir. Dec.

8, 2011) (the parties stipulated that Dr. Head was an expert in the field of child abuse pediatrics);

*Crumhold v. Cain*, Civ. Action No. 11–2543, 2011 WL 6329934, at *4 (E.D. La. Nov. 29, 2011)

(noting the trial court accepted Dr. Head as an expert in the field of child abuse pediatrics),

*adopted*, 2011 WL 6329868 (E.D. La. Dec. 19, 2011).

Given Dr. Head's background and the fact that she had testified as an expert in the field of

child abuse pediatrics on many occasions, Perez has not shown as basis for defense counsel to

object to her qualification as an expert.  Nor has Perez shown any resulting prejudice as he has not

demonstrated that the Trial Court would have denied Dr. Head expert status had defense counsel

objected.

Dr. Head testified regarding some of the possible reasons for "delayed disclosure" of abuse

such as naivete, bribery, threats, guilt, embarrassment, or because the child is close to the abuser

and does not want to get the abuser in trouble.[88]  Dr. Head testified that inconsistencies or

differences in a child's disclosures to multiple people could be due to the number of times the child

was abused and that different interviews could trigger different memories.[89]  Dr. Head testified

regarding her July 28, 2009 examination and interview of A.W. and explained that the physical

examination was normal.[90]  Dr Head explained, however, that a lack of physical injury did not

---

[88]*Id.*, at pp. 785-86.

[89]*Id*., at pp. 787-88.

[90]*Id*., at pp. 789-793.

mean she was not a victim of sexual abuse.[91]  She explained that some contact like touching or use

of the mouth would not leave scars and that the vaginal area of the body heal very quickly.[92]  Dr.

Head explained that A.W. had not seen Perez in five months at the time of her examination and

therefore she would expect a normal exam.[93]

Dr. Head recalled that A.W. was cooperative and told her that Hector Perez touched her

with his hands many times when her mother was not home.[94]  A.W. also told Dr. Head that Perez

tried to "rape" her, but that she physically resisted and tried to prevent him from pulling her pants

down.[95]  Dr. Head agreed that A.W. told her that no one witnessed the events and that she never

saw anything come out of Perez's penis.[96]  Dr. Head testified that A.W. never recanted during her

interview.[97]

It is true that the *Foret* court determined that evidence concerning Child  Sexual Abuse

Accommodation Syndrome "is of highly questionable scientific validity, and fails to unequivocally

pass the *Daubert* threshold test of scientific reliability."  *Foret*, 628 So. 2d at 1127.  However, a

review of Dr. Head's testimony shows that at no time did Dr. Head testify regarding Child Sexual

Abuse Accommodation Syndrome.  Similarly, Dr. Head did not use CSAAS-based testimony to

bolster A.W.'s credibility.  As a result, there was no reason for defense counsel to object to

testimony that did not occur or request a *Daubert* or *Foret* hearing.  "Counsel is not deficient for,

---

[91]*Id.*, at pp. 793-94.

[92]*Id.*, at p. 794.

[93]*Id*., at p. 795.

[94]*Id*., at pp. 790-91, 798

[95]*Id.*, at p. 799.

[96]*Id*., at pp. 799-800.

[97]*Id*., at p. 790.

and prejudice does not issue from, failure to raise a legally meritless claim." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999)); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

The state courts' denial of relief on these claims was not contrary to or an unreasonable application of *Strickland*.  Perez is not entitled to relief on these claims.

### D.    <u>Failure to Move for a Directed Verdict</u>

Perez next claims his counsel was ineffective in failing to object and move for a directed verdict when the victim allegedly failed to testify to all elements of the crime charged.  The State responds that such a motion was not appropriate under Louisiana law, and that Perez fails to show ineffective assistance of counsel.

The state Trial Court found that Perez failed to show ineffective assistance of counsel or prejudice because Louisiana law does not authorize directed verdicts by jury.[98]  The Trial Court additionally noted that on direct appeal the Louisiana First Circuit found the verdict was supported by sufficient evidence and that the trial court did not err in refusing to grant the post-verdict motion for judgment of acquittal.[99]  The Louisiana Supreme Court found Perez failed to show he received ineffective assistance of counsel under *Strickland*.[100]

"It is well settled that the trial court has no authority to grant a directed verdict in a criminal jury trial." *State v. Parfait*, 693 So. 2d 1232, 1242 (La. App. 1st Cir. 1997); *accord State v. Mattire*, No. 2011 KA 2390, 2012 WL 4335432, at *15 (E.D. La. Sept. 21, 2012).  Instead, a motion for judgment of acquittal is allowed under state law only in judge-tried cases.  La. Code Crim. P. art.

---

[98]St. Rec. Vol. 8 of 10, Denial of Application for Post-Conviction Relief and Reasons for Judgment, p. 8, 6/14/19.

[99]*Id.*

[100]*Perez*, 300 So. 3d at 846; St. Rec. Vol. 10 of 10, La. S. Ct, Order, 19-KH-1958, 8/14.20.

778; *Parfait*, 693 So.2d at 1242.  Because Perez was tried before a jury, there was no legal basis for counsel to urge such a motion during trial.  Counsel's performance was not constitutionally ineffective for failure to move for a directed verdict.  *Alvarez v. Cain*, Civ. Action No. 13-6405, 2014 WL 5040698, at *11 (E.D. La. Sept. 25, 2014).

In this case, after trial, defense counsel filed a motion for post judgment of acquittal pursuant to La. Code Crim. P. art. 821(B) and (C).[101]  The Trial Court denied the motion.[102]  On direct appeal, the Louisiana First Circuit found sufficient evidence support the unanimous guilty verdict and found the claims regarding the refusal to grant the post-verdict judgment of acquittal and insufficiency of the evidence to be meritless.[103]  The Louisiana Supreme Court denied the related writ application without explanation.[104]  Perez does not allege any substantive claim regarding the denial of the post-verdict judgment or acquittal or the Louisiana Supreme Court's finding of sufficient evidence to convict Perez.

Perez has not established that the state courts' denial of relief was contrary to or an unreasonable application of *Strickland*.  He is not entitled to relief on this claim.

### E.    Failure to Argue Impeached Testimony is Insufficient for a Conviction

Perez next claims that his counsel was ineffective in failing to argue that the victim's impeached testimony, which was not corroborated, was insufficient to sustain his conviction.  The State argues that this claim is meritless because the jury could rationally find the victim's testimony at trial to be credible despite conflicting evidence.

---

[101] St. Rec. Vol. 2 of 10, Motion for New Trial Pursuant to La.C.Cr.P. Art. 851 (1), (2), (4) & (5), and Motion for Post Judgment of Acquittal Pursuant to La. C. Cr. P. art. 821 B & C, 12/19/14.

[102] St. Rec. Vol. 2 of 10, Order, 12/19/14; St. Rec. Sentencing Minutes, 12/19/14; St. Rec. Vol. 5 of 10, Sentencing Transcript, 1/19/14.

[103] *Perez*, 2015 WL 9464512, at *3-5; St. Rec. Vol. 8 of 10, 1st Cir. Opinion, 2015 KA 1070, pp.5-9, 12/23/15.

[104] *Perez*, 215 So. 3d at 695; St. Rec. Vol. 7 of 10, La. S. Ct. Order, 2016-KO-0176, 2/3/17.

The state Trial Court denied this claim on post conviction relief finding that the Louisiana First Circuit found sufficient evidence to support the conviction.[105]  The Louisiana Supreme Court found Perez failed to show he received ineffective assistance of counsel under *Strickland*.[106]

The record shows that defense counsel argued during closing argument that the police failed to investigate in an attempt to find any corroborating evidence, such as semen on sheets, or corroborating witnesses.[107]  He pointed out the differences in the victim's statement during the Child Advocacy interview and her interview with Dr. Head as well as the fact that the victim recanted her claims at the end of her interview with Julie Kringas.[108]  As previously noted, appellate counsel raised the issue of sufficiency of the evidence on appeal.[109]  Appellate counsel argued that there was no forensic or corroborative evidence to support the victim's claims.[110] Appellate counsel also argued that the witness's testimony, at most proved sexual battery, oral sexual battery, and/or misdemeanor sexual battery.[111]

The First Circuit agreed that "A.W.'s trial testimony did not establish the elements of aggravated rape because [t]he prosecutor at trial did not ask the seventeen-year-old A.W. on the stand to explain with any particularity what the defendant had done to her to establish anal, oral, or vaginal sexual intercourse."[112]  The court explained that A.W. testified that Perez started to do

---

[105]St. Rec. Vol. 8 of 10, Denial of Application for Post-Conviction Relief and Reasons for Judgment, p. 9 6/14/19.

[106]*Perez*, 300 So. 3d at 846; St. Rec. Vol. 10 of 10, La. S. Ct, Order, 19-KH-1958, 8/14/20.

[107]St. Rec. Vol. 5 of 10, Trial Transcript, pp. 1063- , 11/14/14.

[108]*Id*., at pp. 1068-73.

[109] St. Rec. Vol. 6 of 10, Appellate Brief, pp. 11-16, 2015-KA-1070, 8/26/15.

[110]*Id*., at p. 11.

[111]*Id*., at 12-16.

things to her breast, "butt," and vagina that she did not like when she was six years old.[113]  The court, however, found that the Child Advocacy Center interview was evidence of Perez's repeated acts of oral sexual intercourse on the victim.[114]  The court further found that the defense's suggestion that there was no forensic or corroborative evidence was indeed an attack on the victim's credibility, and that the jury chose to believe A.W.'s version of the acts that occurred.[115] The court concluded that "[t]he fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the accepted evidence insufficient," and that the testimony of several witnesses, the victim's testimony and her CAC interview constituted sufficient evidence to support a finding of Perez's guilt beyond a reasonable doubt."[116]

Admittedly, both trial counsel and appellate counsel were unsuccessful in their arguments. A counsel's unsuccessful efforts, however, do not render counsel ineffective.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."); *Baker v. United States*, No. 07cr435, 2011 WL 3841690, at *13 (E.D. Va. Aug. 30, 2011) ("... the record shows [counsel] effectively advocated on Petitioner's behalf by making a timely, reasonable objection ... [t]hus, counsel's actions were effective notwithstanding their lack of success...."), *aff'd*, 477 F. App'x 144 (4th Cir. 2012).

Perez fails to show that the state courts' denial of relief on these issues was contrary to or an unreasonable application of *Strickland*.  He is not entitled to relief on these claims.

---

[112]*Perez,* 2015 WL 9464512, at * 4.

[113]*Id.*

[114]*Id.*

[115]*Id.*, at *5.

[116]*Id.* (citations omitted).

**F.**    **Failure to Object to the State's Use of the Victim's Mother's Out-of-Court Testimonial Statements**

Perez's final claim of ineffective assistance of trial counsel is that his counsel should have objected to the prosecutor eliciting out-of-court testimonial statements made by Angela Perez in violation of *Crawford v. Washington*.  Perez claims that Jayme Anderson and Jackie Nettles both testified regarding statements made by Angela Perez that violated his right to confront witnesses

The State responds that Perez himself admits that defense counsel objected to the testimony, but that the Trial Court overruled the objections.  It further claims there was no Confrontation Clause violation because the statements were offered for a purpose other than the proof of the matter asserted.

The Trial Court found that "[t]he petitioner's admission that trial court [sic] did object shows that trial counsel did not perform deficiently: trial counsel did what the petitioner says trial counsel should have done."[117]  The Trial Court continued that the prosecution offered Angela Perez's statements to Jayme Anderson to establish a foundation that they were false.[118]  Because the statements were not offered for the truth of the matter asserted, the Trial Court concluded that there was no Confrontation Clause violation, counsel did not perform deficiently, and the statements were properly admitted.[119]  The Louisiana Supreme Court found Perez failed to show he received ineffective assistance of counsel under *Strickland*.[120]

---

[117]St. Rec. Vol. 8 of 10, Denial of Application for Post-Conviction Relief and Reasons for Judgment, p. 10, 6/14/19.

[118]*Id.*

[119]*Id.*

[120]*Perez*, 300 So. 3d at 846; St. Rec. Vol. 10 of 10, La. S. Ct, Order, 19-KH-1958, 8/14/20.

At trial, Jayme Anderson (formerly known as Jayme Terrebonne), a St. Tammany Sheriff's Detective at the time of the offense in this case, testified that she responded to a call from A.W.'s school and interviewed A.W. about the sexual abuse by Hector Perez.[121]   After the interview, Anderson and OSC worker Susan Allen went to the Perez home.[122]   As they drove down the driveway, Anderson saw a pick up truck leaving, and later learned Hector Perez was driving the truck.[123]   When the prosecution asked Anderson if Angela Perez told her anything about the person she had observed driving away, defense counsel immediately objected and a side bar was held.[124] The prosecution argued that he was not seeking the information for its truthfulness but rather to show the statement by Angela Perez was not true.[125]   The Trial Court overruled the defense's objection.[126]   Anderson then testified that Angela Perez told her Hector Perez had just left to buy laundry detergent from the store.[127]   Anderson explained that she told Angela Perez that they needed to contact Hector Perez, however, he did not return while they were at the trailer.[128] Anderson told Angela Perez that Hector Perez could not come in contact with either A.W. or his daughter, and that she should contact law enforcement if he returned.[129]

---

[121]St. Rec. Vol. 4 of 10, Trial Transcript (con't), pp. 807-811, 11/12/14.

[122]*Id.*, at p. 811.

[123]*Id.*

[124]*Id.*, at p. 812.

[125]*Id.*, at pp. 812-13.

[126]*Id.*, at p. 813.

[127]*Id.*

[128]*Id.*, at p. 814.

[129]*Id.*

After the girls were interviewed at the Child Advocacy Center, Anderson told Angela Perez that there was a warrant out for Hector Perez's arrest and inquired of her whether she had any contact with him in the last two days.[130]  When the prosecution asked Anderson for Angela's Perez's response, defense counsel immediately objected again, but the Trial Court overruled the objection on the same basis - that Angela Perez's statement was not truthful.[131]  Defense counsel asked for a standing objection to any hearsay to which the Trial Court agreed.[132]  The prosecution then asked Anderson whether Angela Perez had admitted or denied having any phone conversations with Hector Perez since the investigation initiated.[133]  Defense counsel objected as to hearsay and relevance, but the objection was overruled.[134]  Anderson testified that Angela Perez admitted that she had spoken with Hector Perez once over the phone.[135]  As time progressed, Angela Perez told Anderson that she had not spoken to Hector Perez, he had never come home from the store, and she had no idea of his location.[136]  Anderson obtained a court order granting access to Hector Perez's phone records which demonstrated a significant number of phone calls and texting between Angela and Hector Perez.[137]

Perez also cites to the testimony of Jackie Nettles, a counselor for St. Tammany schools, who testified that A.W. told her she was being touched sexually inappropriately by her

---

[130]*Id.*, at pp. 816-17.

[131]*Id.*, at pp. 817-18.

[132]*Id.*, at pp. 818-819.

[133]*Id.*, at p. 819.

[134]*Id.*, at p. 819.

[135]*Id.*

[136]*Id.*, at p. 820.

[137]*Id.*, at pp. 820-21.

stepfather.[138]  Nettles immediately reported the incident to the Office of Community Services.[139]

Nettles testified that in late March A.W. told her that her mother blamed her for ruining their lives,

her mother wanted Hector Perez to come home, and asked A.W. what she was going to do to

rectify the situation.[140]  The Trial Court overruled defense counsel's hearsay objections finding

A.W.'s statements to be excited utterances.[141]  Nettles testified that A.W. told her that her mother

said such things frequently, almost daily.[142]  Defense counsel did not cross-examination Nettles.[143]

The record shows that while defense counsel objected to the foregoing testimony as

hearsay, he did not specifically argue any violation of the Confrontation Clause.    The

Confrontation Clause of the Sixth Amendment provides that in "all criminal prosecutions, the

accused shall enjoy the right ... to be confronted with the witnesses against him." *See Crawford v.*

*Washington*, 541 U.S. 36 (2004).  The Sixth Amendment safeguards the defendant's right to

confront his accusers and to subject their testimony to rigorous testing in an adversary proceeding

before the trier of fact.  *California v. Green*, 399 U.S. 149 (1970).

In *Crawford*, the Court held that the Confrontation Clause prohibits (1) testimonial out-of-

court statements; (2) made by a person who does not appear at trial; (3) received against the

accused; (4) to establish the truth of the matter asserted; (5) unless the declarant is unavailable and

the defendant had a prior opportunity to cross examine him.  *Crawfor*d, 541 U.S. 51-55.

---

[138]St. Rec. Vol. 4 of 10, Trial Transcript, p. 890, 11/13/14.

[139]*Id.*, at p. 891.

[140]*Id.*, at pp. 894-95.

[141]*Id.*, at p. 895.

[142]*Id.*, at p. 896.

[143]*Id.*

It is undisputed that Angela Perez was a fugitive at the time of trial and did not testify. Angela Perez made no out-of-court statements *against* Hector Perez.  Her statements to Anderson about not having communicated with her husband and not knowing his location were actually statements she made in an attempt to conceal his whereabouts and were not offered for the truth of the matter asserted.  Those statements were in fact shown to be untrue.  Hearsay, by definition, is an out-of-court statement *offered for the truth of the matter asserted*.  La. Code Evid. art. 801(C) (emphasis added).  Where a prior statement is admitted solely for non-hearsay purposes, it raises no Confrontation Clause problem.  *Crawford*, 541 U.S. at 59 n. 9 ("The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.  *See Tennessee v. Street*, 471 U.S. 409, 414 (1985).").

As a result, Perez has not shown that defense counsel was ineffective in failing to specifically raise a violation of confrontation when raising his objections to Anderson's testimony. Nor has he shown any resulting prejudice.

As for the Angela Perez's statements to A.W. through Nettles's testimony, those statements did not implicate the Confrontation Clause.  Testimonial statements include "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."  *Crawford*, 541 U.S. at 51.  It is clear that statements made by private individuals to one another in informal conversations outside of a trial context are not made for the primary purpose of aiding in a criminal investigation and, therefore, simply are not "testimonial" in nature for purposes of the Confrontation Clause.  *See*, *e.g.*, *United States v. Ramirez*, 658 F. App'x 949, 954 (11th Cir. 2016); *United States v. Pugh*, 273

F. App'x 449, 454-55 (6th Cir. 2008); *United States v. Brown*, 441 F.3d 1330, 1360 (11th Cir. 2006); *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004).

Perez fails to show that the state courts' denial of relief on these issues was contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on these claims.

### G.    Ineffective Assistance of Appellate Counsel

Perez claims his appellate counsel was ineffective in failing to raise on appeal a claim of prosecutorial misconduct. Perez claims that the prosecutor made prejudicial remarks during closing arguments that were objected to, but no curative instructions were given. He specifically points to the prosecutor referring to Perez as a "demon," stating that the case boiled down to whether the jury believed the victim or Perez, and remarks that the defense attorneys were trained to divert the jury's attention. The State responds that the state courts did not misapply *Strickland*.

The Trial Court, in denying this claim when Perez raised it in his application for post conviction relief, found that, when read in context of the argument, the prosecutor's use of the word "demon" was "an artful use of a figure of speech rather than a gratuitous insult, and was less objectionable than other remarks that did not warrant relief on appellate review."[144] Regarding the prosecutor's remark that the case boiled down to who the jury believed, the Trial Court found that it "was an accurate summary of the state of affairs before the jury. The victim testified that Hector Perez sexually abused her; Hector Perez testified that he did not sexually abuse the victim."[145] Finally, the Trial Court found the remark that the defense was "trained to divert your attention" was "analogous to a prosecutor's reference to smoke screen tactics. And references to smoke screen tactics are listed by the Supreme Court as an example of the kind of closing arguments that

---

[144] St. Rec. Vol 8 of 10, Denial of Application for Post-Conviction Relief and Reasons for Judgment, pp. 12-13, 6/14/19.

[145] *Id.*, at p. 12.

do not warrant relief."[146]   The Trial Court concluded that Perez failed to show that the issue of prosecutor misconduct during closing arguments was clearly stronger than the issues presented on appeal, and, as such, Perez failed to show deficient performance.[147]   It further found Perez failed to show prejudice as there was no reasonable probability he would have obtained a new trial had appellate counsel raised the issues on appeal.[148]   The Louisiana Supreme Court found Perez failed to show he received ineffective assistance of counsel under *Strickland*.[149]

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right.  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).  The *Strickland* standard for judging performance of counsel also applies to claims of ineffective appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997).  To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285–86.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal.  *Green*, 160 F.3d at 1043 (citing *Evitts*, 469 U.S. at 394).  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from

---

[146]*Id.* (citations omitted).

[147]*Id.*, at p. 13.

[148]*Id.*

[149]*Perez*, 300 So. 3d at 846; St. Rec. Vol. 10 of 10, La. S. Ct, Order, 19-KH-1958, 8/14/20.

among them in the exercise of professional judgment to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83–84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to assert every conceivable issue. *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.

Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits her client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." *Id.* at 753. As a result, the test to be applied in assessing such a claim is whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. *See, e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *accord Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Perez is correct that, during the rebuttal closing argument, the prosecution stated, ""This case boils down to: Do you believe [A.W.] or do you believe him"  That's what this case boils down to."[150]  Defense counsel did not object to this statement.  Under Louisiana law, an objection would have been necessary to preserve error for review on direct appeal.  La. Code Crim. P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."); *see also State v. Workman*, 170 So.3d 279, 294 (La. App. 5th Cir. 2015) ("The contemporaneous objection rule provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence.  This rule applies to claims of prosecutorial misconduct." (citation omitted) ).  Without the claim being properly preserved for review on direct appeal, appellate counsel was not in a position to raise the claim on appeal and, if it nevertheless had been raised, the Court of Appeal would have rejected it as procedurally defaulted.  Appellate counsel cannot be considered ineffective "in declining to raise an unreviewable issue." *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001); *accord Weatherspoon v. Cockrell*, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011) ("[A]ppellate counsel was precluded from raising this claim because there had been no contemporaneous objection at trial.  Therefore, appellate counsel was not deficient for failing to raise the issue on appeal, and petitioner suffered no prejudice.  Accordingly, petitioner's instant claim fails because he cannot show a reasonable probability that he would have prevailed on appeal if the issue had been raised.") (citations omitted), *adopted*, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); *Arceneaux v. Cain*, Civ. Action No. 06-3964, 2009 WL 917429, at *10 (E.D. La. Mar. 31, 2009) ("Where appellate review of a claim would be barred due to the absence of a contemporaneous objection, appellate counsel is not ineffective for failing to assert the claim.");

---

[150]St. Rec. Vol. 5 of 10, Trial Transcript, p. 1075, 11/14/14.

*Taylor v. Holliday*, Civ. Action No. 06-4118, 2008 WL 5146505, at *8 (E.D. La. Dec. 4, 2008) (petitioner failed to demonstrate ineffective assistance of appellate counsel when issue was not preserved for appeal.).

When responding to defense counsel's argument that no one checked to see if Perez's hairs were in A.W.'s bed, the prosecutor stated, "that's a diversion. That's what, you know, defense attorneys, they – they're trained to try to divert your attention to the proper issues."[151] Defense counsel's objection to the argument was overruled, however, the Trial Court reminded the jury that anything counsel stated was argument and that "[f]acts are up to you to determine and this is argument."[152]

The prosecutor also stated:

> The first time that [A.W.] stood up to her demon and spoke out, her mother, her mother failed her in every sense of that word. It took her over a year to muster the courage to speak up a second time.
> You may recall Ms. Hammond saying that how powerless she felt and how frustrating it was for her to feel so powerless.
> Well, you 12 citizens are not powerless here today. You have the ability to restore that child's faith in the human race, to tell her that it's over, that she's safe and that her demon is gone. Thank you.[153]

Defense counsel objected to calling Perez a "demon" and moved for a mistrial.[154] The Trial Court denied the motion finding "[i]t's argument."[155]

Under both federal and Louisiana law, prosecutorial misconduct will warrant relief only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

---

[151] *Id.*, at 1076-77.

[152] *Id.*, at 1077.

[153] *Id.*, at p. 1086.

[154] *Id.*, at 1087.

[155] *Id.*

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *accord State v. Murphy*, 206 So.3d 219, 231 (La. App. 1st Cir. 2016); *see also State v. Greenberry*, 154 So.3d 700, 710 (La. App. 5th Cir. 2014) ("Prosecutorial misconduct must be so pronounced and persistent that it casts serious doubts upon the correctness of the jury's verdict.  The reviewing court should accord credit to the good sense and fair-mindedness of the jury that heard the evidence." (citation, quotation marks, and brackets omitted)).  Therefore, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982); *accord State v. Tassin*, 129 So.3d 1235, 1249 (La. App. 5th Cir. 2013).

In assessing the impact of the prosecutorial misconduct, a court looks to such factors as whether the prosecutor's comments manipulated the evidence, misstated the evidence, or implicated other specific rights of the accused (such as the right to remain silent), whether the jury instructions addressed the issue, and whether there was substantial evidence to support the verdict. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986).  None of these factors supports Perez's claim that the prosecutor's statement that the case boiled down to whether the jury believed the victim or Perez constituted prosecutorial misconduct.  The prosecutor's comment in no way manipulated the evidence, misstated the evidence, or implicated another specific constitutional right.  Similarly, the prosecution's use of the word "demon," when read in context of his full argument, did not affect the fairness of the trial to the degree necessary to constitute a constitutional violation and did not constitute prosecutorial misconduct.

Further, the Trial Court repeatedly gave the jury curative instructions.  Directly before opening statements, the Trial Court told the jury that the attorneys were not witnesses and closing arguments were not evidence.[156]  Directly prior to closing arguments, the Trial Court explained to

---

[156]St. Rec. Vol. 3 of 10, Trial Transcript, pp. 664-65, 11/11/14.

the jury that "[t]he closing arguments are simply contentions of each side of what the evidence has failed to show and what inference they feel can be drawn therefrom.  Remember, attorneys are advocates, not witnesses."[157]  The Trial Court again stated, "[t]his is just oral argument.  Again, attorneys are advocates; they are not witnesses."[158]  When instructing the jury after closing arguments, the Trial Court twice more told the jurors that the closing statements were not to be considered evidence.[159]  Finally, the Trial Court instructed the jury that they were "not to be influenced by sympathy, passion, prejudice or public opinion.  You are expected to reach a just verdict."[160]  There is no reason to believe that jurors in this case disregarded those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

This Court therefore cannot say that there is a reasonable probability that Perez would have prevailed on appeal if only a claim of prosecutorial misconduct had been raised.

For all the foregoing reasons, the state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*.  Perez is not entitled to relief on this claim.

## VI.  <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Perez's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days**

---

[157]St. Rec. Vol. 5 of 10, Trial Transcript, at pp. 1056-57, 11/14/14.

[158]*Id.*, at p. 1057.

[159]*Id.*, at pp. 1092-93.

[160]*Id.*, at 1093.

after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.

1996).[161]

New Orleans, Louisiana, this 4th  day of June, 2021.

_____

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[161]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.